# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF MISSOURI

Jane Doe, by and through Next Friend
Loretta Bourbon,
        *Plaintiff,*
v.

Missouri Department of Social Services,
Children's Division, et al.,
        *Defendants.*

CASE NO.
4:26-CV-00016-JAR

JURY TRIAL DEMANDED

## FIRST AMENDED COMPLAINT

**COMES NOW** Plaintiff, Jane Doe, by and through her Next Friend and undersigned counsel, and for her First Amended Complaint against the Defendants, hereby states as follows:

## JURISDICTION AND VENUE

1. This case was removed from the Circuit Court of Crawford County Missouri on January 7th, 2026, pursuant to 28 U.S.C. §§1331, 1367(a), 1441(a), and 1446(b).

2. This Court has original jurisdiction because of the constitutional violations alleged by Plaintiff.

3. This Court has supplemental jurisdiction over the state-related claims pursuant to 28 U.S.C. §1367.

4. Venue is proper pursuant to 28 U.S.C. §1391.

## PARTIES

5. Plaintiff herein, Jane Doe, is a minor child who resides in Crawford County, Missouri. She is a United States citizen.

6. At all times relevant herein, Plaintiff was a foster child under the supervision of

1

Children's Division.

7. The Plaintiff's Next Friend, Loretta Bourbon ("Mrs. Bourbon"), is the legal guardian of the Plaintiff. She is a United States citizen who resides in Crawford County, Missouri.

8. Defendant Missouri Department of Social Services, Children's Division ("Children's Division"), is a statutory body of the State of Missouri organized under the authority of Mo. Rev. Stat. Chapter 660.

9. Defendant Scott Miller was, at all times relevant herein, a Social Worker for the Missouri State Department of Social Services, Children's Division and, upon information and belief, is a resident of Missouri and is a United States citizen.

10. Defendant Robin Honea was, at all times relevant herein, a Social Worker for the Missouri State Department of Social Services, Children's Division and, upon information and belief, is a resident of Missouri and is a United States citizen.

11. Defendant Mindy Shaw was, at all times relevant herein, a Social Worker for the Missouri State Department of Social Services, Children's Division and, upon information and belief, is a resident of Washington and is a United States citizen.

12. Defendant Christina Rueweler-Pogue was, at all times relevant herein, an employee for the Missouri State Department of Social Services, Children's Division and, upon information and belief, is a resident of Missouri and is a United States citizen.

13. Defendant Savannah Pogue was at all times relevant herein, an employee for

2

the Missouri State Department of Social Services, Children's Division and, upon information and belief, is a resident of Missouri and is a United States citizen.

## STATEMENT OF FACTS COMMON TO ALL COUNTS

14. Plaintiff realleges and incorporates by reference the factual averments of the foregoing and following paragraphs as if fully stated herein.

15. This is a 42 U.S.C. §1983 federal civil rights case under the United States Constitution for violations of Plaintiff's constitutional rights pursuant to the Fourth, Fifth, and Fourteenth Amendments which guaranteed Plaintiff the freedom from deprivation of liberty and due process without infringement by any State.

16. Herein, Plaintiff also asserts Missouri state-law claims pursuant to this Court's supplemental jurisdiction under 28 U.S.C. §1367(a). Plaintiff includes these claims in the alternative and does not consent to the adjudication of state-law claims in the absence of a surviving federal claim.

### *Background*

17. In April of 2019, the Plaintiff Jane Doe was born to Michael Abel ("Father") and Sara Baker ("Mother").

18. In November of 2019, Father self-reported to the Missouri Department of Social Services that he and Mother were under the influence of drugs which resulted in Jane Doe being placed into the custody of the State of Missouri through Children's Division.

19. Jane Doe remained in the custody of Children's Division for over two years before

Mother regained full custody of Jane Doe in July of 2022.

20. On March 25th, 2023, Mother abandoned Jane Doe with Mrs. Bourbon leaving Jane Doe in Mrs. Bourbon's care.

21. Following Mother's abandonment of Jane Doe, Mrs. Bourbon contacted the Children's Division office in Steelville, Missouri, to inform them of the situation.

22. On March 31st, 2023, a Safety Intervention Plan was implemented, and Jane Doe remained in Mrs. Bourbon's care.

23. Following the execution of the Safety Intervention Plan, Father submitted a hair follicle drug test and failed it, to which Children's Division was made aware.

24. On April 12th, 2023, Defendant Miller was assigned as the case worker for Jane Doe.

25. On the same day of April 12th, 2023, a Temporary Alternative Placement Agreement ("TAPA") was validly executed by Mother, Father, Mrs. Bourbon, Defendant Miller, Defendant Honea, and Defendant Shaw. *See* **Exhibit 1** – TAPA.

26. The TAPA was governed by Mo. Rev. Stat. §210.123. *See* **Exhibit 1**.

27. As per the TAPA and Mo. Rev. Stat. §210.123., Mrs. Bourbon was required to cooperate with Defendant Children's Division and participate in all services offered by Defendant Children's Division.

28. Said TAPA repeatedly stated that Father's home (a trailer) was not safe for Jane Doe to live in, that Father was currently on probation for DWIs, that he admitted to active drug use, and that he would be unable to provide current evidence of sobriety. *See* **Exhibit 1**, p. 1.

4

29. The TAPA provided that Mrs. Bourbon "will supervise visitation at the park at a minimum of 2 hours a week with proven sobriety." *See* **Exhibit 1**, p. 2.

30. No other exceptions or stipulations existed per the TAPA governing additional visitation or unsupervised visitation. *See* **Exhibit 1**.

31. Defendants were aware of the above considerations as articulated and documented in the TAPA, and Defendants Miller, Shaw, and Honea signed the TAPA. *See* **Exhibit 1**, p. 4.

32. Defendants were aware of Father's criminal background and current illicit behaviors at the time the TAPA was enacted. *See* **Exhibit 1**.

33. On April 13th, 2023, Father received a traffic ticket for Driving While Revoked. Defendants were made aware of this. *See* **Exhibit 2** – Traffic Ticket.

34. Father's lack of a valid driver's license was known by Defendants and documented by Children's Division.

35. Upon information and belief, Father never provided any documentation showing reinstatement of his driver's license or of any other form of driving privilege to Children's Division or any of the Defendants.

### *Preliminary Incidents*

36. In the evening of April 24th, 2023, Jane Doe was found masturbating in her bed.

37. Mrs. Bourbon immediately reported this behavior to Defendant Miller. *See* **Exhibit 3** – Text Messages, p. 1.

38. Defendant Miller stated a therapy session may be scheduled for Jane Doe to understand why she was exhibiting these behaviors, but he did not provide any

further information. *See* **Exhibit 3**, p. 1.

39. Defendant Miller advised Mrs. Bourbon to take Jane Doe to a doctor to have her medically evaluated. *See* **Exhibit 3**, pp. 2-3.

40. On April 25th, 2023, Pursuant to the guidance by Defendant Miller, Jane Doe was given a routine physical exam but was never evaluated or given any other counseling or treatment for suspected sexual abuse. *See* **Exhibit 3**, pp. 2-3.

41. Upon information and belief, Defendant Honea, Defendant Shaw, Defendant Rueweler-Pogue, and Defendant Pogue were made aware of Jane Doe's behaviors on April 24th, 2023.

42. Upon information and belief, neither Defendant Miller, Defendant Honea, Defendant Shaw, Defendant Rueweler-Pogue, Defendant Pogue, nor anyone else from Children's Division investigated this behavior further.

43. In the evening of April 25th, 2023, Jane Doe stated "daddy sucks my butt" to Mrs. Bourbon.

44. Following this statement by Jane Doe, Mrs. Bourbon immediately alerted Defendant Miller of the suspected sexual abuse.

45. Upon information and belief, Defendant Honea, Defendant Shaw, Defendant Rueweler-Pogue, and Defendant Pogue were made aware of Jane Doe's statement on April 25th, 2023.

46. Upon information and belief, neither Defendant Miller, Defendant Honea, Defendant Shaw, Defendant Rueweler-Pogue, nor Defendant Pogue made a hotline call or report of this suspected sexual abuse.

47. On April 27th, 2023, Defendant Miller had a phone conference with Mrs. Bourbon and Father. During this conference, Defendant Miller informed them that he had authorized Father to have unsupervised visits with Jane Doe to take her to church every Sunday. These weekly visits were to begin three days later, on April 30th, 2023. *See* **Exhibit 4** – Court Transcript, pp. 20:21-21:16.

48. During this phone conference, Defendant Miller did not provide any guidance as to the pick-up and drop-off of Jane Doe on April 30th, 2023. Instead, Defendant Miller directed Mrs. Bourbon and Father to mutually arrange the meeting themselves. *See* **Exhibit 4**, pp. 20:21-21:16.

49. Mrs. Bourbon expressed apprehension to Defendant Miller and objected to this meeting arrangement. In response, Defendant Miller affirmatively directed Mrs. Bourbon to allow this unsupervised visit and the meeting arrangement. *See* **Exhibit 4**, pp. 20:23-21:7.

50. Despite knowledge that the custody transfer of Jane Doe was at a separate location, Defendants assumed that supervision was unnecessary because the alleged visit was supposed to take place at a church. *See* **Exhibit 4**, p. 24:1-7, 40:10-12.

51. Defendant Shaw—Defendant Miller's supervisor—approved and authorized this unsupervised visitation between Jane Doe and Father.

52. In addition to Defendant Miller communicating regarding the unsupervised visits, Defendant Miller further communicated that Delinda Abel ("Ms. Abel"), the mother of Father and the grandmother of Jane Doe, was approved for visitations

with Jane Doe.

53. Defendants offered no substantive reason or documentation in support of said authorization of the unsupervised visits.

54. Mrs. Bourbon relied upon the directives and information given by Defendant Miller, the officially assigned case worker for Jane Doe, regarding the approval of unsupervised visits.

55. No consideration was given by Defendants as to how Father would legally transport Jane Doe to and from the scheduled unsupervised visit on April 30th, 2023, as his license was revoked at the time. *See* **Exhibit 4**, p. 27:23-24.

56. Defendants did not know or verify the name or address of the church that Father purported to meet at for the scheduled unsupervised visit on April 30th, 2023. *See* **Exhibit 4**, pp. 27:25-28:7.

57. Father still had not passed a drug test and had admitted to active drug use prior to the scheduled unsupervised visit on April 30th, 2023. *See* **Exhibit 1**, p. 1.

58. As per Defendant Miller, Father had not made significant progress in his drug rehabilitation programs either. *See* **Exhibit 4**, p. 24:8-11.

59. Defendants did not investigate the behavior of Jane Doe on April 24th, 2023, or her allegations of being sexually molested on April 25th, 2023, prior to scheduling Father to have an unsupervised visit with her on April 30th, 2023.

60. Defendants did not request therapy for Jane Doe prior to April 30th, 2023.

61. Jane Doe was not interviewed about being sexually molested at any point prior to Defendants' scheduling of Father to have an unsupervised visit on April 30th,

2023.

62. No Team Decision Making meeting was held nor was a court order entered to grant Father unsupervised visitation in modification of the custody agreement in the TAPA. *See* **Exhibit 1**, p. 2; **Exhibit 5** – Affidavit of Michelle Rafter, p. 1.

63. The relevant parties did not consent to the approval of unsupervised visits. *See* **Exhibit 5**, p. 1.

### *The Incident on April 30th, 2023*

64. On April 30th, 2023, Mrs. Bourbon, acting upon the directives given by Defendant Miller and per her obligation under the TAPA, met with Father and transferred Jane Doe into Father's care for his first unsupervised visit with Jane Doe.

65. On the same day of April 30th, 2023, during said unsupervised visit with Jane Doe, Father took Jane Doe to his trailer and molested her.

66. On May 6th, 2023, while not yet aware of the incident on April 30th, 2023, Mrs. Bourbon took Jane Doe to the park for her scheduled supervised visits with Father and Ms. Abel.

67. At this visitation, Mrs. Bourbon learned that Jane Doe did not go to church with Father on April 30th, 2023, but instead went to Father's trailer.

68. When Mrs. Bourbon asked Jane Doe what happened on April 30th, 2023, Jane Doe responded: "me and daddy laid down and daddy sucked my butt".

69. Upon hearing this, Mrs. Bourbon called and texted Defendant Miller to inform him of Jane Doe's statement, that the April 30th, 2023, unsupervised visitation did not occur at church, and that Jane Doe was molested. *See* **Exhibit 3**, p. 4.

70. Defendant Miller replied to this message stating that he knew "the concerns were there", and that he needed to check with Defendant Shaw regarding making a hotline call. *See* **Exhibit 3**, p. 4.

71. Upon the instruction of Defendant Miller, Mrs. Bourbon made a hotline call to Children's Division regarding the alleged sexual abuse.

72. After being informed that Jane Doe was molested and potentially carried a history of being sexually abused, Mrs. Bourbon began taking Jane Doe to therapy. During one of these therapy sessions, Jane Doe disclosed her sexual abuse to therapist Jessica Newton.

73. On May 26th, 2023, without forewarning, Defendant Honea appeared at Mrs. Bourbon's home, removed Jane Doe from Mrs. Bourbon's custody, and placed Jane Doe into the physical custody of Children's Division. *See* **Exhibit 6** – Court Report Dated 6/22/2023, p. 1.

74. As per Mo. Rev. Stat. §210.123.6., Children's Division was required to submit a written report to the juvenile office ten days before termination of the TAPA and provide a copy of said report to Mrs. Bourbon, the placement provider for Jane Doe.

75. Upon information and belief, no report was submitted, and Mrs. Bourbon did not receive a copy of any report.

76. While giving testimony in the juvenile case for Jane Doe, Defendant Honea stated that the removal of Jane Doe from Mrs. Bourbon was not due to any actions by Mrs. Bourbon. *See* **Exhibit 4**, p. 38:7-20.

77. Defendant Honea further explained that her reasoning for removing Jane Doe from Mrs. Bourbon's custody was for Jane Doe's safety as there was an unknown person named Tina. *See* **Exhibit 4**, p. 36:18-25.

78. Tina was not a person named in the initial hotline call, nor was she named in the initial court report, nor has she been identified since. *See* **Exhibit 4**; **Exhibit 6**.

79. While giving testimony in the juvenile case for Jane Doe, Defendant Miller explained that there were no concerns with Jane Doe being placed with Mrs. Bourbon and that Jane Doe was in no harm. *See* **Exhibit 4**, pp. 19:24-20:5.

80. Despite the testimony given by Defendants Miller and Honea, the initial court report filed on June 22nd, 2023, posed Mrs. Bourbon and her husband to be unsafe people by interpreting drawings made by Jane Doe. *See* **Exhibit 6**, p. 2.

81. On May 30th, 2023, Michelle Rafter ("Ms. Rafter") was assigned as Jane Doe's new case worker. *See* **Exhibit 5**, p. 1.

82. On June 15th, 2023, Mrs. Bourbon was informed by Ms. Rafter that Father should never have been approved for unsupervised visitation. *See* **Exhibit 5**, p. 1.

83. Ms. Rafter further informed Mrs. Bourbon that Ms. Abel did not pass her background check and should not have been permitted visitation with Jane Doe.

84. On June 22nd, 2023, a court report was filed in Crawford County Circuit Court Case 23CF-JU00054. *See* **Exhibit 6**.

85. The court report was deficient and misstates the relevant facts of what occurred

leading to and including the incident on April 30th, 2023. *See* **Exhibit 5**, p. 1.

86. The court report, at page 2, stated that Mrs. Bourbon was the one who intentionally let Jane Doe meet with Father unsupervised on her own volition, despite all contact needing to be supervised. *See* **Exhibit 6**.

87. The court report further stated that Mrs. Bourbon let Jane Doe go with Father unsupervised, even though his contact with Jane Doe "was to be supervised." *See* **Exhibit 6**, p. 2.

88. This court report was based upon information gleaned from an investigative report made by Children's Division regarding the incident on April 30th, 2023, and the documentation they had regarding Jane Doe's case. *See* **Exhibit 5**, p. 1.

89. The aforesaid investigative report was factually deficient despite the knowledge and documentation that Children's Division had in its possession prior to making said report. *See* **Exhibit 5**, p. 1.

90. Upon information and belief, Defendant Honea was the one who drafted said investigative report. *See* **Exhibit 5**, p. 1.

91. Defendant Rueweler-Pogue approved the aforesaid court report. *See* **Exhibit 6**, p. 4.

92. The court report was not marked as erroneous until June 25th, 2023, when Mrs. Bourbon informed Jane Doe's new caseworker, Ms. Rafter, of the multiple errors and untruths reported by Defendants. *See* **Exhibit 5**, p. 2.

93. An amended court report was filed in the juvenile action on July 7th, 2023. *See* **Exhibit 7** – Amended Court Report Dated 7/7/2023.

94. This amended court report removed all mention of Mrs. Bourbon and the purported dangers that she and her household posed to Jane Doe as stated in the initial court report. *See* **Exhibit 6**; **Exhibit 7**.

95. On July 26th, 2023, a hearing was held in the juvenile case for Jane Doe regarding the April 30th, 2023, molestation and the erroneous court report filing. *See* **Exhibit 4**, pp. 5:25-6:8.

96. The June 22nd, 2023, court report was deemed erroneous, and the amended court report was entered as the official court report following the hearing on July 26th, 2023. *See* **Exhibit 4**, p. 46:17-24.

97. Pursuant to the April 30th, 2023, molestation, Father was prosecuted in Crawford County Circuit Court Case 23CF-CR00765-01. Judgment was entered against Father and he was sentenced to 10 years in prison for Child Molestation.

## COUNT I – 42 U.S.C. §1983 – STATE CREATED DANGER
### [AGAINST ALL DEFENDANTS OFFICIALLY AND INDIVIDUALLY]

98. Plaintiff realleges and incorporates by reference the factual averments of the foregoing and following paragraphs as if fully stated herein.

99. At all times relevant herein, Defendants Miller, Honea, Shaw, Rueweler-Pogue, and Pogue were acting under the color of state law as employees of Defendant Children's Division.

100. Defendants retained legal custody of Jane Doe at all relevant times described herein.

101. Defendants had a legal duty to protect Jane Doe and to act in her best interests

at all times described herein. *See* Mo. Rev. Stat. §210.564.

102.  The events, as described herein, demonstrate a state-created danger caused by Defendants as they affirmatively created a specific danger of sexual assault/sexual molestation by mandating Jane Doe's exposure to Father on April 30th, 2023. Defendants mandated this unlawful contact despite the knowledge of Father's criminal history, active drug use, and the temporal proximity of the April 24th, and April 25th, 2023, reports that Jane Doe had been allegedly sexually abused by Father and that she was exhibiting signs of a sexual abuse victim. *See* **Exhibit 1**, p. 1; **Exhibit 4**, pp. 20:21-21:16; **Exhibit 5**, p. 1.

103.  Father posed a known, actual, and obvious risk to Jane Doe as was noted in the TAPA, criminal proceedings, and other documentation that Defendants were aware of. The threat posed by Father to Jane Doe was heightened by the documented allegations of sexual abuse against him on April 25th, 2023, and the reported behaviors of Jane Doe on April 24th, 2023. *See* **Exhibit 1**, p. 1; **Exhibit 3**, p. 1.

104.  The April 30th, 2023, incident was foreseeable by Defendants as Father was a known criminal, and the alleged sexual abuse reported by Jane Doe on April 25th, 2023, displayed the exact type of harm that she would face on April 30th, 2023. *See* **Exhibit 1**, p. 1; **Exhibit 2**.

105.  Defendants had actual knowledge and documented evidence of Father's criminal history, active drug use, unsafe living conditions, lack of a valid driver's license, and Jane Doe's allegations of sexual abuse against him. Despite this

14

knowledge, Defendants affirmatively authorized and facilitated an unsupervised visit between Jane Doe and Father on April 30th, 2023, without interviewing Jane Doe regarding the sexual abuse allegations, without requiring any sexual abuse evaluation or therapeutic assessment, without verifying the location of the visit, and without confirming how Father would transport Jane Doe. *See* **Exhibit 1**, p. 1; **Exhibit 2**; **Exhibit 4**, pp. 20:21-21:16, 28:8-16; **Exhibit 5**, p. 1.

106. The sexual molestation by Father on April 30th, 2023, was not random. It was the exact situation that was made known to Defendants five days prior on April 25th, 2023, which Defendants intentionally disregarded.

107. By authorizing and facilitating unsupervised contact between Jane Doe and Father despite known dangers, Defendants affirmatively created and increased the risk of sexual abuse, and their conduct was the but-for and proximate cause of Jane Doe's sexual molestation on April 30th, 2023. *See* **Exhibit 1**, p. 1; **Exhibit 2**; **Exhibit 4**, pp. 20:21-21:16, 28:8-16; **Exhibit 5**, p. 1.

108. Defendants deliberately and knowingly overrode the existing safety restrictions of the TAPA and authorized unsupervised contact with Father despite the actual and suspected danger he posed to Jane Doe, even in the face of the disclosed sexual assault and sexual abuse signs as made known on April 24th, and April 25th, 2023. *See* **Exhibit 1**, p. 1; **Exhibit 4**, pp. 20:21-21:16.

109. Defendants were deliberately indifferent to the dangers and potential for Father to sexually molest Jane Doe and proceeded to authorize unsupervised visits regardless. *See* **Exhibit 1**, p. 1; **Exhibit 4**, pp. 20:21-21:16, 28:8-16.

110. By authorizing the April 30th, 2023 unsupervised visit, Defendants exercised the authority of the State to override the existing safety restrictions and custodial arrangements imposed under the TAPA and affirmatively directed Mrs. Bourbon to comply with those changes. *See* **Exhibit 4**, pp. 20:21-21:16.

111. Defendant Miller's directive to Mrs. Bourbon to permit the April 30th, 2023, unsupervised visit was not simply advisory; it was a mandatory order issued under color of state authority.

112. Under state law and the TAPA, Mrs. Bourbon was required to comply with directives given by Defendant Children's Division and its agents, including Defendant Miller.

113. Defendants used their authority from the State to exercise dominion over Mrs. Bourbon's decision to transfer custody of Jane Doe to Father on April 30th, 2023.

114. Further, Defendants permitted Ms. Abel to have contact with Jane Doe under the guise that she was authorized to when, in fact, she had not cleared her background check. This needlessly placed Jane Doe in the proximity of an unauthorized party on May 6th, 2023, during a supervised visit.

115. Defendants made and filed an erroneous court report with full knowledge of the factual misrepresentations made regarding the April 30th, 2023, molestation and Defendant Miller and Defendant Shaw's authorization of the unsupervised visit. *See* **Exhibit 6**.

116. This conduct by Defendants to shift the responsibility of the April 30th, 2023, incident shows their intent to conceal their role in creating the danger which led

16

to Jane Doe's molestation. This intent and concealment is indicative of their wrongdoing and bad faith.

117. Through these actions, Defendants engaged in conduct that was arbitrary, conscience-shocking, and deliberately indifferent to Jane Doe's safety and rights.

118. Jane Doe was injured as a result of Defendants' reckless indifference and the affirmative creation of the threat posed by Father.

119. As a direct and proximate result of Defendants' actions, their deliberate indifference to Jane Doe's Fourteenth Amendment rights, Jane Doe suffered significant damages, including but not limited to: being molested, emotional distress, displacement between foster families for months, further contact with her abuser, substantial psychological and emotional trauma, monetary losses, and other injuries, damages, and losses. Plaintiff is entitled to relief under 42 U.S.C. §1983.

**WHEREFORE,** Plaintiff prays for Judgment against Defendants for reasonable actual damages attributed to the conduct of Defendants, and for such other and further relief as this Court deems just and proper.

### COUNT II – 42 U.S.C. §1983 – VIOLATION OF PLAINTIFF'S FIFTH AND FOURTEENTH AMENDMENT RIGHTS
[AGAINST ALL DEFENDANTS OFFICIALLY AND INDIVIDUALLY]

120. Plaintiff realleges and incorporates by reference the factual averments of the foregoing and following paragraphs as if fully stated herein.

121. At all times relevant herein, Defendants Miller, Honea, Shaw, Rueweler-Pogue, and Pogue were acting under the color of state law as employees of

Defendant Children's Division.

122.   Defendants, by their actions, are not entitled to qualified immunity as they knowingly and deliberately violated Jane Doe's clearly established constitutional rights.

123.   At all times relevant herein, under the Fifth and Fourteenth Amendments, Jane Doe had clearly established constitutional rights to procedural and substantive due process, bodily integrity, and protection from deprivation of liberty without due process. U.S. Const. amend. V and XIV.

124.   On April 27th, 2023, and subsequently April 30th, 2023, Jane Doe's Fifth and Fourteenth Amendment rights of bodily integrity and personal security were deprived by Defendants who, without due process of law, authorized and directed unsupervised contact between Jane Doe and a known danger after receiving specific reports of sexual abuse on April 24th, and April 25th, 2023. *See* **Exhibit 1**, p. 1; **Exhibit 4**, pp. 20:21-21:16; **Exhibit 5**, p. 1.

125.   Defendants' actions on April 27th, 2023, to authorize unsupervised visitation with Father, despite known and documented risks, constituted an arbitrary exercise of government power that directly exposed Jane Doe to being sexually molested on April 30th, 2023. *See* **Exhibit 4**, pp. 20:21-21:16.

126.   Defendants further deprived Jane Doe of due process by failing to follow reporting obligations and the TAPA which divested Jane Doe of her protections as guaranteed by the Constitution. *See* Mo. Rev. Stat. §210.115. and §210.123. *See also* **Exhibit 1.**

18

127. Jane Doe possessed a fundamental right under the Fourteenth Amendment to bodily integrity and to be free from State action that affirmatively created or increased the risk of private violence. Jane Doe also possessed a protected liberty interest in stable placement and in the statutory procedures governing child custody and safety.

128. As a direct and proximate result of Defendants' conduct, Jane Doe suffered an invasion of her bodily integrity and personal liberty in violation of the Fifth and Fourteenth Amendments. *See* **Exhibit 4**, pp. 20:21-21:16.

129. Through these actions, Defendants engaged in conduct that was arbitrary, conscience-shocking, and deliberately indifferent to Jane Doe's safety.

130. Defendants' actions on April 27th, 2023, affirmatively created the conditions that allowed Father to sexually molest Jane Doe on April 30th, 2023, and therefore violated her substantive due process rights under the state-created danger doctrine. *See* **Exhibit 4**, pp. 20:21-21:16.

131. Defendants deprived Jane Doe of these liberty interests without probable cause, notice, a court order, a Team Decision Making meeting, complying with the TAPA, or complying with mandatory statutory procedures, including but not limited to the reporting and termination requirements imposed by Missouri law. *See* Mo. Rev. Stat. §210.115. and §210.123. *See also* **Exhibit 5**, p. 1.

132. Defendants made and filed an erroneous court report with full knowledge of the factual misrepresentations made regarding the April 30th, 2023, molestation and Defendant Miller and Defendant Shaw's authorization of the unsupervised

19

visit. *See* **Exhibit 6**.

133. This conduct by Defendants to shift the responsibility of the April 30th, 2023, incident shows their intent to conceal their role in creating the danger which led to Jane Doe's molestation. This intent and concealment are indicative of their wrongdoing and bad faith.

134. The absence of constitutionally adequate procedures, combined with Defendants' arbitrary exercise of State-given authority, violated Jane Doe's procedural due process rights under the Fifth and Fourteenth Amendments.

135. The foregoing, and other actions, represent Defendants' deliberate indifference to the constitutional rights of Jane Doe and resulted directly in a deprivation of Jane Doe's Fifth and Fourteenth Amendment rights as guaranteed by the United States Constitution.

136. As a direct and proximate result of Defendants' deliberate indifference and their deliberate violation of the Fifth and Fourteenth Amendments, Jane Doe suffered significant damages, including but not limited to: being molested, emotional distress, displacement between foster families for months, further contact with her abuser, substantial psychological and emotional trauma, monetary losses, and other injuries, damages, and losses. Plaintiff is entitled to relief under 42 U.S.C. §1983.

**WHEREFORE,** Plaintiff prays for Judgment against Defendants for reasonable actual damages attributed to the conduct of Defendants, and for such

other and further relief as this Court deems just and proper.

## COUNT III – 42 U.S.C. §1983 – VIOLATION OF PLAINTIFF'S FOURTH AMENDMENT RIGHTS
### [AGAINST ALL DEFENDANTS OFFICIALLY AND INDIVIDUALLY]

137.    Plaintiff realleges and incorporates by reference the factual averments of the foregoing and following paragraphs as if fully stated herein.

138.    At all times relevant herein, Defendants Miller, Honea, Shaw, Rueweler-Pogue, and Pogue were acting under the color of state law as employees of Defendant Children's Division.

139.    Defendants, by their actions, are not entitled to qualified immunity as they knowingly and deliberately violated Jane Doe's clearly established constitutional rights.

140.    At all times relevant herein, under the Fourth Amendment, Jane Doe had a clearly established constitutional right to protection from unreasonable seizure by the State. U.S. Const. amend. IV.

141.    On April 27th, 2023, and subsequently April 30th, 2023, Jane Doe's Fourth Amendment rights were violated by Defendants as they acted outside of their discretion and unreasonably seized her by directing and coercing her transfer into the unsupervised physical custody of Father on April 30th, 2023, absent a court order or a Team Decision Making meeting. *See* **Exhibit 4**, pp. 20:21-21:16; **Exhibit 5**, p. 1.

142.    This seizure was unreasonable because Defendants had documentation and knowledge that Father posed a substantial and immediate risk to Jane Doe,

21

including behaviors exhibited by Jane Doe on April 24th, 2023, that Jane Doe was sexually abused, and a specific allegation of sexual abuse against Father made five days earlier on April 25th, 2023. Defendants nevertheless authorized and mandated the custody transfer while also using their authority to order Mrs. Bourbon to comply. *See* **Exhibit 1**, p. 1; **Exhibit 4**, pp. 20:21-21:16.

143. Further, Defendants later seized Jane Doe from Mrs. Bourbon's custody on May 26th, 2023, without advance notice, without compliance with statutory termination procedures under Mo. Rev. Stat. §210.123, and without stating an emergency that justified immediate removal. *See* **Exhibit 4**, p. 38:7-20; **Exhibit 6**, p. 1.

144. These seizures were reckless, unsupported, objectively unreasonable, and which violated Jane Doe's clearly established Fourth Amendment right to be free from unreasonable seizure.

145. Through these actions, Defendants engaged in conduct that was arbitrary, conscience-shocking, and deliberately indifferent to Jane Doe's safety and rights.

146. Defendants deprived Jane Doe of her Fourth Amendment rights without probable cause, notice, a court order, a Team Decision Making meeting, complying with the TAPA, or complying with mandatory statutory procedures, including but not limited to the reporting and termination requirements imposed by Missouri law. *See* Mo. Rev. Stat. §210.115. and §210.123. *See also* **Exhibit 5**, p. 1.

147. Defendants made and filed an erroneous court report with full knowledge of the factual misrepresentations made regarding the April 30th, 2023, molestation

22

and Defendant Miller and Defendant Shaw's authorization of the unsupervised visit. *See* **Exhibit 6**.

148. This conduct by Defendants to shift the responsibility of the April 30th, 2023, incident shows their intent to conceal their role in creating the danger which led to Jane Doe's molestation. This intent and concealment are indicative of their wrongdoing and bad faith.

149. The absence of constitutionally adequate procedures, combined with Defendants' arbitrary exercise of State-given authority, violated Jane Doe's procedural due process rights under the Fourth Amendment.

150. The foregoing, and other actions, represent Defendants' deliberate indifference to the constitutional rights of Jane Doe and resulted directly in a deprivation of Jane Doe's Fourth Amendment rights as guaranteed by the United States Constitution.

151. As a direct and proximate result of Defendants' deliberate indifference and their deliberate violation of the Fourth Amendment, professional duties, and statutory responsibilities, Jane Doe suffered significant damages, including but not limited to: being molested, emotional distress, displacement between foster families for months, further contact with her abuser, substantial psychological and emotional trauma, monetary losses, and other injuries, damages, and losses. Plaintiff is entitled to relief under 42 U.S.C. §1983.

**WHEREFORE,** Plaintiff prays for Judgment against Defendants for reasonable actual damages attributed to the conduct of Defendants, and for such other and further relief as this Court deems just and proper.

## COUNT IV – NEGLIGENCE
### [AGAINST ALL DEFENDANTS OFFICIALLY AND INDIVIDUALLY]

152. Plaintiff realleges and incorporates by reference the factual averments of the foregoing and following paragraphs as if fully stated herein.

153. In the alternative to Plaintiff's 42 U.S.C. §1983 claims, Plaintiff pleads the following Missouri state-law allegations with respect to state-law claims.

154. At all times relevant herein, Defendants Miller, Honea, Shaw, Rueweler-Pogue, and Pogue were employees of Defendant Children's Division, and were acting within the course and scope of their employment while exercising state-given authority over Jane Doe's custody, placement, and safety.

155. At all times relevant herein, Defendants owed Jane Doe a duty to exercise reasonable care in the investigation, reporting, supervision, and management of suspected child abuse which arose from their legal custody, control, and statutory responsibilities toward her.

156. Defendants had a duty to act in the best interests of Plaintiff. *See* Mo. Rev. Stat. §210.564.

157. Missouri law imposes mandatory reporting obligations upon Children's Division employees who have reasonable cause to suspect that a child has been abused or neglected. Mo. Rev. Stat. §210.115. These reporting obligations are

24

mandatory and non-discretionary and are intended to protect children from further harm.

158. Defendants had a mandatory, ministerial duty to immediately report the incident on April 24th, 2023, about Jane Doe masturbating. Her behavior constituted reasonable cause to suspect that Jane Doe was a sexual abuse victim and thus required reporting. *See* Mo. Rev. Stat. §210.115.

159. Defendants had a mandatory, ministerial duty to immediately report the incident on April 25th, 2023, when they were made aware that Jane Doe stated, "daddy sucks my butt". This was an explicit disclosure of sexual assault and gave Defendants reasonable cause to suspect that sexual abuse occurred and required reporting. *See* Mo. Rev. Stat. §210.115.

160. Despite having reasonable cause to suspect sexual abuse, Defendants failed to make an immediate hotline report regarding the disclosures and behaviors observed on April 24th and April 25th, 2023.

161. Defendants had no lawful discretion to delay reporting suspected sexual abuse under Mo. Rev. Stat. §210.115., and their failure to report constituted a breach of their mandatory, ministerial duties.

162. At all times relevant herein, Defendants were bound by the terms of the TAPA, which specifically stated that Plaintiff's only physical contact with Father be supervised. *See* **Exhibit 1**, p. 2.

163. Compliance with the terms of the TAPA was a statutory and regulatory ministerial duty imposed upon Defendants under Mo. Rev. Stat. §210.123. and 13

CSR 35-30.030.

164. Defendants had no discretion to unilaterally modify, suspend, or deviate from the supervision requirements imposed by the TAPA.

165. On April 27th, 2023, in direct violation of the TAPA's terms, Defendants Miller and Shaw authorized and facilitated an unsupervised visit between Jane Doe and Father on April 30th, 2023. *See* **Exhibit 1**, p. 1; **Exhibit 4**, pp. 20:21-21:16; **Exhibit 5**, p. 1.

166. By authorizing the unsupervised visit, Defendants failed to perform their statutory, ministerial duty to comply with the TAPA and breached their duty of care to Plaintiff.

167. In the event that the TAPA was not validly terminated, Defendants lacked lawful authority to remove Jane Doe from Mrs. Bourbon's care on May 26th, 2023, absent an emergency or compliance with statutory procedures.

168. In the event that the TAPA was validly terminated, Defendants failed to comply with Mo. Rev. Stat. §210.123.6., which required Children's Division to submit a written report to the juvenile office ten days before termination of the TAPA and provide a copy of said report to Mrs. Bourbon.

169. This duty of Defendants to provide the termination report was their statutory, ministerial duty, and their failure to comply constituted a breach of said duty.

170. In the alternative that compliance with the TAPA is deemed discretionary, Defendants Miller and Shaw acted with bad faith and malice by abusing their State-given authority to override the TAPA's safety restrictions.

26

171. Defendants' bad faith and malice are evidenced by their conduct which included: their intentional, unlawful modification of the custody arrangement; their deliberate indifference to the known and obvious harm that Father presented to Jane Doe, by allowing Father—a known danger to Jane Doe—to have unsupervised contact with Jane Doe on April 30th, 2023; their ordering of Mrs. Bourbon to comply with the April 30th, 2023; visit; their unlawful removal of Jane Doe from Mrs. Bourbon's custody on May 26th, 2023 and; by their intentional filing of an erroneous court report on June 22nd, 2023, to shift the blame of their fault onto Mrs. Bourbon. *See* **Exhibit 1**, p. 1; **Exhibit 4**, pp. 20:21-21:16; **Exhibit 5**, p. 1; **Exhibit 6**.

172. Defendant Honea's removal of Jane Doe from Mrs. Bourbon's custody on May 26th, 2023, was malicious and done in bad faith to shirk the fault of the April 30th, 2023, molestation from Defendants to Mrs. Bourbon.

173. Although Defendants Miller and Honea admitted that Jane Doe faced no danger in Mrs. Bourbon's household, they falsely represented the opposite in their initial court report, asserting that Mrs. Bourbon and her husband were unsafe based on Defendants' subjective interpretation of Jane Doe's drawings. *See* **Exhibit 6**, p. 2.

174. Defendants used this false narrative and their State-given authority to unlawfully seize Jane Doe from Mrs. Bourbon's custody on May 26th, 2023.

175. Defendants knowingly created, approved, and filed the erroneous June 22nd, 2023, court report falsely attributing responsibility for the April 30th, 2023,

molestation solely to Mrs. Bourbon, while omitting Defendants Miller and Shaw's role in mandating the unsupervised visit. *See* **Exhibit 6.**

176. Defendants made these misrepresentations with full knowledge of their falsity and of their own involvement in authorizing the unsupervised contact.

177. This conduct by Defendants to shift the responsibility of the April 30th, 2023, incident shows their intent to conceal their role in creating the danger which led to Jane Doe's molestation. This intent and concealment is indicative of wrongdoing, bad faith, and malice.

178. As a direct and proximate result of Defendants' actions, Jane Doe was; molested, suffered emotional distress, displaced between foster families for months, subjected to further contact with her abuser, suffered substantial psychological and emotional trauma, and had to seek therapy for her trauma.

179. The harm posed to Jane Doe was reasonably foreseeable based upon the documented and known risk that Father posed to Jane Doe, his criminal history, his failure to prove sobriety, his unsafe living conditions, and the information provided on April 24th and April 25th, 2023, by Jane Doe which showed that he sexually abused Jane Doe previously.

180. To the extent that sovereign immunity and official immunity would otherwise apply, Defendants waived such immunity under Missouri Law through: the negligent performance or failure to perform ministerial duties, conduct undertaken in bad faith or with conscious disregard for Jane Doe's safety, and/or the purchase of liability insurance covering such claims.

**WHEREFORE,** Plaintiff prays for Judgment against Defendants for reasonable actual damages attributed to the conduct of Defendants, and for such other and further relief as this Court deems just and proper.

## COUNT V – INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS
### [AGAINST ALL DEFENDANTS OFFICIALLY AND INDIVIDUALLY]

181. Plaintiff realleges and incorporates by reference the factual averments of the foregoing and following paragraphs as if fully stated herein.

182. In the alternative to Plaintiff's 42 U.S.C. §1983 claims, Plaintiff pleads the following Missouri state-law allegations with respect to state-law claims.

183. At all times relevant herein, Defendants Miller, Honea, Shaw, Rueweler-Pogue, and Pogue were acting under the color of state law as employees of Defendant Children's Division.

184. As stated herein, Defendants engaged in extreme and outrageous conduct that exceeded all possible bounds of decency and is regarded as utterly intolerable.

185. Specifically, Defendants knowingly authorized, directed, and mandated unsupervised contact between Jane Doe and Father on April 30th, 2023, with malice and in bad faith.

186. At the time of their actions, Defendants had actual knowledge and documented evidence of Father's criminal history, active drug use, unsafe living conditions, lack of a valid driver's license, and Jane Doe's allegations of sexual abuse against him. Despite this knowledge, Defendants affirmatively authorized and facilitated an unsupervised visit between Jane Doe and Father on April 30, 2023, without

29

interviewing Jane Doe regarding the sexual abuse allegations, without requiring any sexual abuse evaluation or therapeutic assessment, without verifying the location of the visit, and without confirming how Father would transport Jane Doe. By approving and arranging the unsupervised visit under these conditions, Defendants knowingly exposed Jane Doe to a known and foreseeable risk of sexual abuse that would not have existed but for Defendants' affirmative placement and authorization decisions. *See* **Exhibit 1**, p. 1; **Exhibit 4**, pp. 20:21-21:16; **Exhibit 5**, p. 1; **Exhibit 6**.

187.   Defendants undertook these actions with actual knowledge, or with reckless disregard, that mandating the exposure of Jane Doe to her Father, her abuser, would cause or have a high probability of causing severe physical, emotional, and psychological harm.

188.   Defendants knew that physical harm, emotional trauma, psychological injury, and distress were substantially certain to result, yet deliberately disregarded that certainty and proceeded to authorize and enforce the April 30th, 2023, unsupervised visitation, nonetheless.

189.   Defendants' conduct was not accidental, inadvertent, or merely negligent, but constituted a willful misuse of State-given authority in conscious disregard of Jane Doe's safety and emotional well-being.

190.   The sexual molestation that occurred on April 30th, 2023, was the precise harm Defendants knew was likely to occur, and Defendants' actions were the direct and proximate cause of Jane Doe's resulting emotional distress.

191. As a direct result of Defendants' actions Plaintiff Jane Doe's distress was severe, and she sustained and will continue to sustain mental anguish, shock, emotional distress, physical manifestations of emotional distress, embarrassment, loss of self-esteem, disgrace, grief, humiliation, loss of enjoyment of life, post-traumatic stress disorder resulting from sexual abuse, depression, nightmares, psychological injuries, and mental sickness.

192.  Jane Doe's psychological trauma is continuous and ongoing; she has required considerable therapy due to her trauma and will indefinitely need emotional and psychological therapy to manage her distress.

193. Due to Defendants' actions being made in bad faith and with reckless indifference to the consequences, Defendants are not entitled to sovereign or official immunity.


**WHEREFORE,** Plaintiff prays for Judgment against Defendants for reasonable actual damages attributed to the conduct of Defendants, and for such other and further relief as this Court deems just and proper.


## COUNT VI – NEGLIGENT SUPERVISION
### [AGAINST DEFENDANT CHILDREN'S DIVISION]

194. Plaintiff realleges and incorporates by reference the factual averments of the foregoing and following paragraphs as if fully stated herein.

195. In the alternative to Plaintiff's 42 U.S.C. §1983 claims, Plaintiff pleads the following Missouri state-law allegations with respect to state-law claims.

196.   At all times relevant herein, Defendant Children's Division exercised legal custody, control, and supervisory authority over Plaintiff and over its employees, including Defendants Miller, Honea, Shaw, Rueweler-Pogue, and Pogue.

197.   At all times relevant herein, Defendant Children's Division had a statutory and regulatory duty to supervise its employees to ensure compliance with mandatory child-protection statutes, regulations, and safety plans designed to protect children in state custody from abuse and neglect, including but not limited to the duties imposed by Mo. Rev. Stat. §§ 210.109, 210.115, 210.123, 210.145, and 210.564.

198.   These supervisory duties were ministerial and non-discretionary, and included, but were not limited to: ensuring compliance with mandatory reporting obligations under Mo. Rev. Stat. §210.115; ensuring enforcement of the supervision restrictions imposed by the TAPA; ensuring that employees did not authorize or facilitate unsupervised contact prohibited by the TAPA; ensuring compliance with mandatory notice and reporting requirements governing termination or modification of a TAPA under Mo. Rev. Stat. §210.123 and; preventing the submission of materially false or misleading court reports concerning child safety and placement decisions.

199.   Defendant Children's Division, through its supervisory personnel and internal reporting structures, had actual knowledge that: Jane Doe exhibited sexualized behaviors on April 24th, 2023, constituting reasonable cause to suspect sexual abuse; Jane Doe made a direct report of sexual abuse by Father

32

on April 25th, 2023; the TAPA in effect expressly prohibited unsupervised contact between Jane Doe and Father and; Defendants Miller and Shaw nonetheless authorized and mandated an unsupervised visit on April 30th, 2023.

200.   Defendant Children's Division had no lawful discretion to permit supervisory inaction in the face of known violations of agreements, mandatory child-protection statutes, and safety plans.

201.   Defendant Children's Division's failure to enforce these mandatory safeguards constituted a breach of its ministerial duty to supervise its employees and to protect Jane Doe from foreseeable harm.

202.   In addition, the intentional filing of the June 22nd, 2023, erroneous court report that falsely attributed the April 30th, 2023, molestation of Jane Doe solely to the individual actions of Mrs. Bourbon was a concerted effort by Defendants Miller, Honea, Shaw, Rueweler-Pogue, and Pogue to conceal their fault, yet these actions went entirely unchecked by Defendant Children's Division. *See* **Exhibit 5**, pp. 1-2; **Exhibit 6**.

203.   Defendants Miller, Honea, Shaw, Rueweler-Pogue, and Pogue used their office and State authority to file this erroneous court report with full knowledge of the factual misrepresentations made regarding the April 30th, 2023, molestation and Defendant Miller and Defendant Shaw's authorization of the unsupervised visit.

204.   As a result of the issues raised above, Defendant Children's Division failed to uphold their duty to supervise Defendants Miller, Honea, Shaw, Rueweler-Pogue, and Pogue, its employees.

33

205. The harm suffered by Jane Doe was reasonably foreseeable and was the precise type of harm the mandatory supervisory and reporting requirements were designed to prevent.

206. As a direct result of Defendant Children's Division's failure to supervise, Plaintiff Jane Doe's distress was severe, and she sustained and will continue to sustain mental anguish, shock, emotional distress, physical manifestations of emotional distress, embarrassment, loss of self-esteem, disgrace, grief, humiliation, loss of enjoyment of life, post-traumatic stress disorder resulting from sexual abuse, depression, nightmares, psychological injuries, and mental sickness.

207. Jane Doe's psychological trauma is continuous and ongoing; she has required considerable therapy due to her trauma and will indefinitely need emotional and psychological therapy to manage her distress.

208. To the extent that sovereign immunity and official immunity would otherwise apply, Defendant Children's Division waived such immunity under Missouri Law through: the negligent performance or failure to perform ministerial duties, conduct undertaken in bad faith or with conscious disregard for Jane Doe's safety, and/or the purchase of liability insurance covering such claims.

**WHEREFORE,** Plaintiff prays for Judgment against Defendant Children's Division for reasonable actual damages attributed to the conduct of Defendant Children's Division, and for such other and further relief as this Court deems just

and proper.

## COUNT VII – RESPONDEAT SUPERIOR
### [AGAINST DEFENDANT CHILDREN'S DIVISION]

209. Plaintiff realleges and incorporates by reference the factual averments of the foregoing and following paragraphs as if fully stated herein.

210. At all times relevant herein, Defendant Children's Division was the employer of Defendant Miller, Defendant Honea, Defendant Shaw, Defendant Rueweler-Pogue, and Defendant Pogue.

211. At all times relevant herein, Defendants Miller, Honea, Shaw, Rueweler-Pogue, and Pogue were acting under the color of state law as employees of Defendant Children's Division, and were performing functions related to child placement, supervision, custody decisions, and reporting obligations.

212. Defendant Children's Division had the right to control and did control the actions of its employees, including the authority exercised over child custody, visitation, and placement decisions affecting Jane Doe.

213. The tortious acts committed by Defendants Miller, Honea, Shaw, Rueweler-Pogue, and Pogue, as pleaded herein, were committed in the course and scope of their employment and in furtherance of the business of the Defendant Children's Division.


**WHEREFORE,** Plaintiff prays for Judgment against Defendant Children's Division for reasonable actual damages attributed to the conduct of Defendant Children's Division, and for such other and further relief as this Court deems just

and proper.

## DAMAGES

As a direct and proximate result of Defendants' unlawful and unconstitutional conduct, Plaintiff Jane Doe has sustained severe and permanent injuries and damages, including but not limited to:

A. Physical injury and invasion of bodily integrity;

B. Severe emotional distress, mental anguish, trauma, anxiety, and post-traumatic stress;

C. Past and future medical, psychological, and therapeutic treatment expenses;

D. Pain and suffering, humiliation, and loss of enjoyment of life;

E. Impairment of normal childhood development and future life opportunities;

F. Loss of personal security and sense of safety; and

G. Other compensable injuries to be proven at trial.

Plaintiff seeks compensatory damages in an amount to be determined by the jury, but in excess of SEVENTY-FIVE THOUSAND DOLLARS ($75,000.00). Additionally, Plaintiff seeks punitive damages against Defendants Miller, Honea, Shaw, Rueweler-Pogue, and Pogue, in their individual capacities, to punish and deter their conduct as described herein that was reckless and exhibited callous indifference to Jane Doe's federally protected rights.

Plaintiff also seeks reasonable attorneys' fees and costs pursuant to 42 U.S.C. §1988, plus pre and post-Judgment interest, any other damages deemed reasonable and proper by this Court, and for such further and additional relief as may be justified in the premises.

## JURY DEMAND

Plaintiff demands a jury trial on all issues in this cause, including liability and damages, and on any issue raised by this Complaint that involves any fact disputed by the Defendants and on any issue that may be raised by the Defendants that involves any fact disputed by Plaintiff.

Respectfully submitted,

By: /s/ Jacob Chinnery
**Jacob Chinnery # 77909**
Attorney for Plaintiff
211 W Main St
P.O. Box 1144
Steelville, Missouri 65565
(573) 775-1400
(314) 477-8694
jchinnery@molaw.org

## CERTIFICATE OF SERVICE

The undersigned counsel does hereby certify that the foregoing was served on

all parties by filing on the Court's CM/ECF system this 4th day of February 2026.

Respectfully submitted,

By: /s/ Jacob Chinnery
**Jacob Chinnery # 77909**
Attorney for Plaintiff
211 W Main St
P.O. Box 1144
Steelville, Missouri 65565
(573) 775-1400
(314) 477-8694
jchinnery@molaw.org