**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF MISSOURI**
**EASTERN DIVISION**

| | |
|---|---|
| JANE DOE, *by and through next friend* Loretta Bourbon,       Plaintiff,       v. MISSOURI DEPARTMENT OF SOCIAL SERVICES, CHILDREN'S DIVISION, *et al.*,       Defendants. | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)   No. 4:26-cv-00016-JAR |

## MEMORANDUM AND ORDER

This matter is before the Court on Defendants' motion to dismiss for failure to state a

claim pursuant to Fed. R. Civ. P. 12(b)(6). ECF No. 26. Plaintiff filed a memorandum in

opposition to Defendants' motion to dismiss. ECF No. 28. Defendants filed a reply. ECF No. 29.

For the reasons set forth below, Defendants' motion will be granted in part and denied in part.

### BACKGROUND

In April 2019, Plaintiff Jane Doe was born to Michael Abel ("Father") and Sara Baker

("Mother").[1] In November 2019, Father self-reported to the Missouri Department of Social

Services that he and Mother were under the influence of drugs. Jane Doe was thereafter placed

into the custody of the State of Missouri via Defendant Missouri Department of Social Services,

Children's Division ("Defendant Children's Division"). Mother regained full custody of Jane

Doe in July 2022, but Mother abandoned her in March 2023 and left her in the care of Loretta

---

[1] The facts detailed in this section derive from Plaintiff's amended complaint, ECF No. 16, unless otherwise noted.

Bourbon. Defendant Children's Division then implemented a Safety Intervention Plan through which Jane Doe remained in Bourbon's care. Defendant Children's Division was thereafter made aware that Father failed a drug test.

On April 12, 2023, Defendant Scott Miller was assigned as the case worker for Jane Doe. At that time, a Temporary Alternative Placement Agreement (the "TAPA") was validly executed by Mother, Father, Bourbon, and Defendants Miller, Robin Honea, and Mindy Shaw. The TAPA and Mo. Rev. Stat. § 210.123 required Bourbon to cooperate with Defendant Children's Division and participate in all services offered by Defendant Children's Division. The TAPA specified that Father's home (a trailer) was not safe for Jane Doe to live in, that Father was currently on probation for DWIs, that he admitted to active drug use, and that he would be unable to provide current evidence of sobriety. The TAPA also provided that Bourbon "will supervise visitation at the park at a minimum of 2 hours a week with proven sobriety." ECF No. 16-2 at 2. The TAPA provided no other exceptions or stipulations concerning additional or unsupervised visits. Defendants were aware of the TAPA's provisions and Defendants Miller, Shaw, and Honea signed the TAPA. Defendants were also aware of Father's criminal background and ongoing illicit behaviors at the time the TAPA was executed. Defendants were made aware that Father received a traffic ticket on April 13, 2023 for Driving While Revoked. Father's lack of a valid driver's license was known by Defendants and documented by Defendant Children's Division.

On April 24, 2023, Jane Doe was found masturbating in her bed. Bourbon immediately reported this behavior to Defendant Miller, who stated that a therapy session may be scheduled to understand why she was exhibiting these behaviors, and advised Bourbon that Jane Doe should be medically evaluated. The petition alleges that, upon information and belief, Defendants Honea, Shaw, Christina Rueweler-Pogue, and Savannah Pogue were made aware of

2

Jane Doe's behaviors on April 24. Per Defendant Miller's advice, Jane Doe was given a routine physical exam the next day, but she was never evaluated or given counseling or treatment for suspected sexual abuse.

On April 25, 2023, Jane Doe stated "daddy sucks my butt" to Bourbon, who then immediately alerted Defendant Miller of suspected sexual abuse. Upon information and belief, Defendants Honea, Shaw, Rueweler-Pogue, and Pogue were made aware of Jane Doe's statement on April 25. Upon information and belief, neither Defendants Miller, Honea, Shaw, Rueweler-Pogue, nor Pogue made a hotline call or report regarding suspected sexual abuse.

On April 27, 2023, Defendant Miller informed Bourbon and Father during a phone conference that he had authorized Father to have unsupervised visits with Jane Doe to take her to church every Sunday, starting on April 30, 2023. Defendant Miller directed Bourbon and Father to arrange pick-up and drop-off of Jane Doe. Bourbon expressed apprehension and objected to the meeting arrangement. In response, Defendant Miller affirmatively directed Bourbon to allow the unsupervised visit and meeting arrangement. Despite knowledge that the custody transfer of Jane Doe was at a separate location, Defendants allegedly assumed that supervision was unnecessary because the visit was supposed to take place at a church. Defendant Shaw, Defendant Miller's supervisor, approved and authorized this unsupervised visit between Jane Doe and Father. Defendant Miller further communicated that Delinda Abel, the mother of Father and the grandmother of Jane Doe ("Grandmother"), was approved for visits with Jane Doe. Defendants offered no substantive reason or documentation in support of the supposed authorization of the unsupervised visits. Bourbon relied upon the directives of Defendant Miller regarding the approval of unsupervised visits. Defendants gave no consideration as to how Father would legally transport Jane Doe to and from the scheduled unsupervised visit on April 30, as his

3

license was revoked at the time. Defendants did not know or verify the name or address of the church that Father purported to meet at for the scheduled unsupervised visit. Father still had not passed a drug test and had admitted to active drug use prior to the scheduled unsupervised visit. According to Defendant Miller, Father had also not made significant progress in his drug rehabilitation programs. Defendants did not investigate Jane Doe's April 24 behavior or her April 25 statement prior to scheduling Father's unsupervised visit. Jane Doe was not interviewed about being sexually molested at any point prior to Defendants' scheduling of Father's unsupervised visit. And there was no Team Decision Making meeting or any court order granting Father unsupervised visitation in modification of the custody agreement in the TAPA.

On April 30, 2023, Bourbon, acting upon Defendant Miller's directives and per her obligation under the TAPA, transferred Jane Doe into Father's care for his first unsupervised visit with Jane Doe. During this unsupervised visit, Father molested Jane Doe in his trailer. On May 6, 2023, while not yet aware of the April 30 incident, Bourbon took Jane Doe to the park for her scheduled supervised visit with Father and Grandmother. During this visit, Bourbon learned that Jane Doe did not go to church with Father on April 30, but instead went to Father's trailer. When Bourbon asked Jane Doe what happened on April 30, Jane Doe responded: "me and daddy laid down and daddy sucked my butt." Bourbon then immediately called and texted Defendant Miller to inform him of Jane Doe's statement, that the April 30 unsupervised visit did not occur at church, and that Jane Doe was molested. Defendant Miller replied that he knew "the concerns were there," and that he needed to check with Defendant Shaw regarding making a hotline call. Upon the instruction of Defendant Miller, Bourbon made a hotline call to Defendant Children's Division regarding the alleged sexual abuse. After being informed that Jane Doe was molested and carried a potential history of sexual abuse, Bourbon began taking Jane Doe to therapy.

4

During a therapy session, Jane Doe disclosed her sexual abuse to therapist Jessica Newton.

On May 26, 2023, without forewarning, Defendant Honea appeared at Bourbon's home, removed Jane Doe from Bourbon's custody, and placed Jane Doe into the physical custody of Defendant Children's Division. As per Mo. Rev. Stat. § 210.123.6, Defendant Children's Division was required to submit a written report to the juvenile office ten days before terminating the TAPA and provide a copy of the report to Bourbon, the placement provider for Jane Doe. Upon information and belief, no report was submitted, and Bourbon did not receive a copy of any report. While testifying in the juvenile case for Jane Doe, Defendant Honea stated that the removal of Jane Doe from Bourbon's custody was not due to any of Bourbon's actions. Defendant Honea explained that her reasoning for removing Jane Doe from Bourbon's custody was for Jane Doe's safety, as there was an unknown person named Tina, who was not a person named in the initial hotline call or in the initial court report, and who has never been identified. While testifying in the juvenile case for Jane Doe, Defendant Miller explained that there were no concerns with Jane Doe being placed with Bourbon. Despite the testimony of Defendants Miller and Honea, the initial court report filed on June 22, 2023 submitted that Bourbon and her husband were unsafe people by interpreting drawings made by Jane Doe.

On May 30, 2023, Michelle Rafter was assigned as Jane Doe's new case worker. On June 15, 2023, Bourbon was informed by Rafter that Father should never have been approved for unsupervised visitation. Rafter further informed Bourbon that Grandmother did not pass her background check and should not have been permitted visitation with Jane Doe. On June 22, 2023, a court report was filed in Crawford County Circuit Court. The court report was deficient and misstated the relevant facts of what occurred leading to and including the April 30 incident. At page 2, the court report stated that Bourbon intentionally allowed Jane Doe to meet and visit

5

with Father unsupervised on her own volition, despite all contact needing to be supervised. The court report based its information on an investigative report and other documentation produced by Defendant Children's Division regarding the April 30 incident and Jane Doe's case. The investigative report was factually deficient despite the knowledge and documentation that Defendant Children's Division possessed prior to producing the report. Upon information and belief, Defendant Honea drafted the investigative report, and Defendant Rueweler-Pogue approved the court report.

On June 25, 2023, Bourbon informed Rafter of the multiple errors and falsehoods in the court report, which was thereafter marked as erroneous. On July 7, 2023, an amended court report was filed in the juvenile action. The amended court report removed all mention of Bourbon and the purported dangers that she and her household posed to Jane Doe.

On July 26, 2023, a hearing was held in the juvenile case for Jane Doe regarding the April 30 molestation and the court report filing. The June 22 court report was deemed erroneous, and the amended court report was entered as the official court report. Based on the April 30 molestation, Father was prosecuted in Crawford County Circuit Court. Judgment was entered against Father and he was sentenced to 10 years in prison for the offense of child molestation.

Plaintiff originally filed this action in state court. Plaintiff's amended complaint (the "complaint") asserts federal claims under 42 U.S.C. § 1983 against all Defendants officially and individually for state-created danger and violations of Plaintiff's Fourth, Fifth, and Fourteenth Amendment rights (Counts I-III), state law claims against all Defendants officially and individually for negligence (Count IV) and intentional infliction of emotional distress (Count V), and state law claims against Defendant Children's Division for negligent supervision (Count VI) and respondeat superior (Count VII).

6

On January 7, 2026, Defendants removed this action to this Court. On March 19, 2026, Defendants filed the present motion to dismiss. On April 2, 2026, Plaintiff filed a memorandum in opposition to Defendants' motion to dismiss. On April 13, 2026, Defendants filed a reply. The issues are fully briefed and the Court is prepared to rule.

**LEGAL STANDARD**

The purpose of a motion to dismiss under Rule 12(b)(6) is to test the legal sufficiency of the complaint. To survive a motion to dismiss for failure to state a claim, the plaintiff's allegations must contain "sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). The plausibility requirement is satisfied when the plaintiff "pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *In re SuperValu, Inc.*, 925 F.3d 955, 962 (8th Cir. 2019). A pleading of labels and conclusions, a formulaic recitation of the elements of a cause of action, or naked assertions devoid of factual enhancement will not suffice. *Hamilton v. Palm*, 621 F.3d 816, 817-18 (8th Cir. 2010).

When ruling on a motion to dismiss, the court must liberally construe a complaint in favor of the plaintiff. *Huggins v. FedEx Ground Package Sys., Inc.*, 592 F.3d 853, 862 (8th Cir. 2010). The court accepts the plaintiff's allegations as true and draws all reasonable inferences in favor of the non-moving party. *Torti v. Hoag*, 868 F.3d 666, 671 (8th Cir. 2017). However, the court is not bound to accept as true a legal conclusion couched as a factual allegation, and factual allegations must be enough to raise a right to relief above the speculative level. *Id*. The issue is

7

not whether the plaintiff will ultimately prevail, but whether the plaintiff has presented "enough facts to state a claim that is plausible on its face." *Id.*

**DISCUSSION**

## I.    FEDERAL CLAIMS

In Counts I through III, Plaintiff asserts three separate claims against all Defendants officially and individually under 42 U.S.C. § 1983: state-created danger (Count I); violation of Fifth and Fourteenth Amendment rights (Count II); and violation of Fourth Amendment rights (Count III).

### 1.   Section 1983 – State-created danger (Count I)

In Count I, Plaintiff alleges that Defendants caused a state-created danger of sexual abuse by mandating Jane Doe's exposure to Father on April 30, 2023. Plaintiff asserts that Father posed a known, actual, and obvious risk to Jane Doe due to his criminal history, active drug use, unsafe living conditions, lack of a valid driver's license, and Jane Doe's allegations of his sexual abuse on April 25, 2023, all of which were noted in the TAPA, criminal proceedings, and other documentation known to Defendants. Nonetheless, Defendants authorized and facilitated an unsupervised visit between Jane Doe and Father on April 30, without interviewing Jane Doe regarding the sexual abuse allegations, without requiring any sexual abuse evaluation or therapeutic assessment, without verifying the location of the visit, and without confirming how Father would transport Jane Doe. Plaintiff asserts that Defendants intentionally disregarded the sexual abuse allegations, that they created the risk of sexual abuse, and that their conduct was the but-for and proximate cause of Jane Doe's sexual molestation on April 30. Plaintiff contends that Defendants exercised the authority of the State to override the safety restrictions and custodial arrangements under the TAPA and directed Bourbon to comply with those changes as an order

8

issued under color of state authority. Plaintiff also asserts that Defendants filed an erroneous court report with full knowledge of its factual misrepresentations regarding the April 30 incident and intending to conceal their role in creating the danger of sexual abuse. Plaintiff further alleges that Defendants' conduct throughout was arbitrary, conscience-shocking, and deliberately indifferent to Jane Doe's safety and rights.

In their motion to dismiss, Defendants note that Plaintiff's complaint alleges that Defendants constitute the State of Missouri and state officials acting in their official capacities, and that Plaintiff seeks compensatory and punitive damages. Defendants therefore contend that under Counts I-III, Plaintiff's complaint does not state a valid claim against Defendants in their sovereign and official capacities pursuant to Section 1983. Defendants alternatively argue that Defendants are entitled to immunity pursuant to the Eleventh Amendment. *Will v. Michigan Dept. of State Police*, 491 U.S. 58, 71 (1989) ("neither a State nor its officials acting in their official capacities are 'persons' under § 1983"). Defendants also maintain that Plaintiff fails to provide any sort of precedent to show that Defendants' conduct violated clearly established rights. *See Harmon v. Preferred Family Healthcare, Inc.*, 125 F.4th 874, 884 (8th Cir. 2025) (finding that plaintiff fell "short of showing the alleged constitutional violation was clearly established" because "[s]he provided no precedent with sufficiently analogous facts to place the [defendants] on notice that their conduct fell below a constitutional standard").

In response, Plaintiff points out that Defendants have been sued in their official and individual capacities, and the natural person Defendants are "persons" in their individual capacities and may be sued under Section 1983. *Hafer v. Melo*, 502 U.S. 21, 31 (1991). Since Defendants do not address this separation of capacities, Plaintiff contends that Defendants' request for a complete dismissal is improper, and the Section 1983 claims cannot be dismissed in

their entirety. *Will*, 491 U.S. at 71. Plaintiff also submits that the Eleventh Amendment permits Section 1983 claims against persons in their individual capacities. *Hafer*, 502 U.S. at 22.

The Court finds that Plaintiff's Section 1983 claims against Defendant Children's Division and other Defendants in their official capacities are not viable. "Section 1983 provides a cause of action against 'persons' only." *Barket, Levy & Fine, Inc. v. St. Louis Thermal Energy Corp.*, 948 F.2d 1084, 1086 (8th Cir. 1991). Suit against a state instrumentality qualifies an action against the state itself, and thus for purposes of Section 1983, a state agency or instrumentality is not a "person." *See Stanton v. Johnson*, 13 Fed.Appx. 441, 441 (8th Cir. 2001) ("[A]bsent waiver of Eleventh Amendment immunity, neither state nor its agencies may be subject to suit in federal court.") (citing *Puerto Rico Aqueduct and Sewer Auth. v. Metcalf & Eddy, Inc.*, 506 U.S. 139, 144 (1993)). Furthermore, Section 1983 claims cannot generally be brought against a state official in their "official" capacity. The Supreme Court has clearly held that neither a State nor its officials acting in their official capacities are "persons" under Section 1983. *Will*, 491 U.S. at 71. Defendant Children's Division is a department of the State of Missouri. A claim against a department of the State is treated as being made against the State. *See Engel v. Corizon*, No. 4:20-CV-1828-AGF, 2021 WL 949635, at *3 (E.D. Mo. Mar. 12, 2021). Defendant Children's Division and the other Defendants in their official capacities are thus not "persons" for purposes of Section 1983. Therefore, Plaintiff's complaint in Count I fails to state a claim upon which relief can be granted against Defendant Children's Division and the other Defendants in their official capacities. Defendants' motion to dismiss Count I of Plaintiff's complaint will be granted as to Defendant Children's Division and Defendants Miller, Honea, Rueweler-Pogue, Pogue, and Shaw in their official capacities.

Section 1983 suits can, however, be brought against state officials acting in their

10

individual (or personal) capacities. *See Wagner v. Jones*, 664 F.3d 259, 268 (8th Cir. 2011) ("In an individual capacity suit under § 1983, a plaintiff seeks to impose personal liability on a state actor for actions taken under color of state law."). When a state actor is sued in an individual capacity, the affirmative defense of qualified immunity is available. *Serna v. Goodno*, 567 F.3d 944, 952 (8th Cir. 2009). The threshold question for qualified immunity is whether the facts alleged, taken in the light most favorable to the party asserting the injury, show that the officials' conduct violated a constitutional right; if there is a constitutional violation, the question is whether that right was clearly established. *Littrell v. Franklin*, 388 F.3d 578, 582 (8th Cir. 2004). Immunity will extend to the officials' actions if their conduct was objectively legally reasonable in light of the information they possessed at the time of the alleged violation. *Id*. at 583.

Constitutional violations may be alleged on a state-created danger theory. The Eighth Circuit has ruled that "the state owes a duty to protect individuals if it created the danger to which the individuals are subjected." *Hart v. City of Little Rock*, 432 F.3d 801, 805 (8th Cir. 2005) (citation omitted). To succeed on the state-created danger theory, a plaintiff must prove (1) that she was a member of a limited, precisely definable group, (2) that the defendants' conduct put her at a significant risk of serious, immediate, and proximate harm, (3) that the risk was obvious or known to the defendants, (4) that the defendants acted recklessly in conscious disregard of the risk, and (5) that in total, the defendants' conduct shocks the conscience. *Id*. "State officials create the danger faced by an individual when they act affirmatively to place [him] in a position of danger that he would not otherwise have faced." *S. S. v. McMullen*, 225 F.3d 960, 962 (8th Cir. 2000) (en banc) (cleaned up) (holding that the complaint was properly dismissed where the state returned a child to an already existing dangerous environment, concluding that such conduct was effectively the same as "do[ing] nothing").

The fifth factor of the state-created danger theory, conduct by the defendants that shocks the conscience, requires action that "must either be motivated by an intent to harm or," deliberate indifference when deliberation is practical. *Montgomery v. City of Ames*, 749 F.3d 689, 695 (8th Cir. 2014). "Deliberate indifference requires both that the official 'be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists' and that the official actually draw that inference. Mere negligence, or even gross negligence, is not actionable." *Id*. (quoting *Hart*, 432 F.3d at 805-06) (internal citations omitted).

### Robin Honea, Christina Rueweler-Pogue, and Savannah Pogue

The Court finds that Plaintiff fails to plausibly allege that Defendants Honea, Rueweler-Pogue, and Pogue's conduct put Jane Doe at a significant risk of serious, immediate, and proximate harm. While the complaint does allege that Defendants Honea, Rueweler-Pogue, and Pogue were made aware of Jane Doe's behaviors on April 24 and 25, 2023, and that each of them failed to investigate or make a hotline call or report suspected sexual abuse, it does not plausibly allege that these Defendants specifically acted to put Jane Doe in harm's way. The complaint states that Defendants "affirmatively created a specific danger . . . by mandating Jane Doe's exposure to Father" and that Defendants "mandated this unlawful contact." ECF No. 16 at 14. The complaint further alleges that Defendants "affirmatively authorized and facilitated an unsupervised visit between Jane Doe and Father." *Id*. at 15. However, these allegations group the Defendants together without providing facts that would support the assertion that Defendants Honea, Rueweler-Pogue, and Pogue specifically put Jane Doe at a significant risk of harm. In the absence of such factual support, the above allegations concerning the Defendants as a group are no more than "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements," and are thus insufficient. *Iqbal*, 556 U.S. at 678. Moreover, "[l]iability

12

under § 1983 requires a defendant's personal involvement in the alleged misconduct." *Morris v. Davis*, No. 4:24-CV-00878-HEA, 2026 WL 73790, at *2 (E.D. Mo. Jan. 9, 2026) (citing *Madewell v. Roberts*, 909 F.2d 1203, 1208 (8th Cir. 1990) ("Liability under § 1983 requires a causal link to, and direct responsibility for, the deprivation of rights.")). Plaintiff's complaint does not allege sufficient facts demonstrating Defendants Honea, Rueweler-Pogue, and Pogue's personal involvement and direct responsibility for putting Jane Doe at a significant risk of harm. With that element of the state-created danger theory lacking, Plaintiff fails to state such a claim, and the Court will accordingly grant Defendants' motion to dismiss Count I as to Defendants Honea, Rueweler-Pogue, and Pogue in their individual capacities.

**<u>Scott Miller</u>**

As to Defendant Miller, the Court finds that Plaintiff's complaint satisfies the first factor of the state-created danger theory, as Plaintiff Doe was a specifically-identified foster child under Defendant Children's Division's custody at all relevant times. Second, Plaintiff plausibly alleges that Defendant Miller's order of unsupervised visitation with Father on April 30, 2023 put Plaintiff at a significant risk of serious and immediate harm and abuse. Third, Plaintiff plausibly alleges that this risk was obvious or known to Defendant Miller, as he knew of Father's drug use, criminal history, probation status, unsafe living conditions, and Bourbon reported the suspected sexual abuse directly to Defendant Miller. Indeed, the complaint alleges that when Bourbon texted Defendant Miller regarding the sexual abuse that occurred on April 30, Defendant Miller replied that he knew "the concerns were there." ECF No. 16 at 10. Fourth, Plaintiff plausibly alleges that Defendant Miller acted recklessly in conscious disregard of the risk, as Defendant Miller did not interview Jane Doe about her earlier behavior and statement to Bourbon, conduct a sexual abuse evaluation or forensic interview, verify the visitation location, or address

13

transportation with Father, who had a revoked license. Rather, Defendant Miller ordered Bourbon, over her objections, to comply with the unsupervised visit.

Furthermore, Plaintiff has plausibly alleged the fifth factor, conduct by the defendant that shocks the conscience. As alleged, Defendant Miller at the very least acted with "deliberate indifference" when deliberation was practical. *Montgomery*, 749 F.3d at 695. Defendant Miller was aware of facts, namely Plaintiff's behavior and statement to Bourbon, from which the inference could be drawn that a substantial risk of serious harm existed to Plaintiff if she were placed into an unsupervised visit with Father. Plaintiff also alleges that Defendant Miller was deliberately indifferent to the dangers posed by Father, supporting the fifth factor's requirement that the inference of substantial risk of serious harm actually be drawn. Therefore, Plaintiff plausibly alleges state-created danger as to Defendant Miller, and Defendants' motion to dismiss Count I will be denied as to Defendant Miller in his individual capacity.

**<u>Mindy Shaw</u>**

As explained above, the Court finds that Plaintiff's complaint satisfies the first factor of the state-created danger theory. Second, Plaintiff plausibly alleges that Defendant Shaw's approval and authorization of the unsupervised visitation between Jane Doe and Father put Plaintiff at a significant risk of serious and immediate harm and abuse. Third, Plaintiff plausibly alleges that this risk was obvious or known to Defendant Shaw, as she knew of Father's drug use, criminal history, probation status, and unsafe living conditions, and she was made aware of Jane Doe's behaviors on April 24 and 25, 2023. Fourth, Plaintiff plausibly alleges that Defendant Shaw acted recklessly in conscious disregard of the risk, as Defendant Shaw did not interview Jane Doe about her behavior and statement to Bourbon, conduct a sexual abuse evaluation or forensic interview, verify the visitation location, or address transportation with Father.

14

Plaintiff has also plausibly alleged the fifth factor of state-created danger as to Defendant Shaw. As alleged, Defendant Shaw at the very least acted with "deliberate indifference" when deliberation was practical. *Id*. Defendant Shaw was aware of Plaintiff's behaviors, from which the inference could be drawn that a substantial risk of serious harm existed to Plaintiff if she were placed into an unsupervised visit with Father. Moreover, Plaintiff alleges that Defendant Shaw was deliberately indifferent to the dangers posed by Father, supporting the fifth factor's requirement that the inference of substantial risk of serious harm actually be drawn. Therefore, Plaintiff plausibly alleges state-created danger as to Defendant Shaw, and Defendants' motion to dismiss Count I will be denied as to Defendant Shaw in her individual capacity.

### 2.  Section 1983 – Violation of Fifth and Fourteenth Amendment rights (Count II)

In Count II, Plaintiff alleges that under the Fifth and Fourteenth Amendments, Jane Doe had clearly established constitutional rights to procedural and substantive due process, bodily integrity, and protection from deprivation of liberty without due process. The complaint further alleges that on April 27 and April 30, 2023, Jane Doe's Fifth and Fourteenth Amendment rights of bodily integrity and personal security were deprived by Defendants who, without due process of law, authorized and directed unsupervised contact between Jane Doe and Father, a known danger, after receiving reports of sexual abuse. Plaintiff states that Defendants' authorization of the unsupervised visit with Father, despite known risks, constituted an arbitrary exercise of government power that directly exposed Jane Doe to sexual abuse. Further, Defendants' actions created the conditions that allowed Father to sexually molest Jane Doe, and Defendants therefore violated her substantive due process rights under the state-created danger doctrine. The complaint also alleges that Defendants deprived Jane Doe of due process by failing to follow reporting obligations and the TAPA which divested Jane Doe of her protections as guaranteed by

15

the Constitution, and that the absence of constitutionally adequate procedures combined with Defendants' arbitrary exercise of state authority violated Jane Doe's procedural due process rights under the Fifth and Fourteenth Amendments.

Defendant moves to dismiss Count II because to the extent it relies on a claimed violation under the Fifth Amendment, the claim fails because the Fifth Amendment Due Process Clause applies only to the federal government and federal entities. And as with Count I, Defendants maintain they are entitled to qualified immunity with respect to the allegations of Count II.

Responding in opposition, Plaintiff states that Defendants fail to address her Fourteenth Amendment rights to substantive due process. Plaintiff contends that Fourteenth Amendment rights survive on their own and cannot be jointly dismissed in Count II with her Fifth Amendment rights. Moreover, Plaintiff maintains that Defendants' conduct in authorizing and mandating the unsupervised visit deprived Plaintiff of her clearly established liberty interest in freedom from state-directed exposure to her abuser, without constitutionally adequate process such as a court order, Team Decision Making meeting, or forensic interview, in direct violation of the TAPA's safety restrictions.

The Court finds that just as with Count I, Plaintiff's Section 1983 claims in Count II against Defendant Children's Division and the other Defendants in their official capacities are not viable. *Will*, 491 U.S. at 71. Thus, Defendants' motion to dismiss Count II of Plaintiff's complaint will be granted as to Defendant Children's Division and Defendants Miller, Honea, Rueweler-Pogue, Pogue, and Shaw in their official capacities. Moreover, Plaintiff's claimed violation of her Fifth Amendment rights fails because the Due Process Clause of the Fifth Amendment applies only to the federal government. *See Truong v. Hassan*, 829 F.3d 627, 631

16

n.4 (8th Cir. 2016). Thus, the Court will grant Defendants' motion to dismiss Count II's Fifth Amendment claim under Rule 12(b)(6).

With respect to procedural due process under the Fourteenth Amendment, the Eighth Circuit has held that the process by which Defendant Children's Division responds to a report of child abuse and neglect does not create any "entitlements subject to constitutional protections under the Fourteenth Amendment." *Forrester v. Bass*, 397 F.3d 1047, 1056 (8th Cir. 2005) (cleaned up). Accordingly, Plaintiff has no clearly established constitutional right to procedural due process in the context of this action, and the Court will grant Defendants' motion to dismiss Count II's procedural due process claim under Rule 12(b)(6).

The Court also finds that Plaintiff's Fourteenth Amendment substantive due process claim under the state-created danger doctrine in Count II is redundant and duplicative of Count I. "In the Eighth Circuit, duplicative claims are properly dismissed under Rule 12(b)(6)." *G.F. v. Blue Cross & Blue Shield of Texas*, No. 2:21-CV-4079-MDH, 2021 WL 3557651, at *2 (W.D. Mo. Aug. 11, 2021). Upon review of Plaintiff's complaint, it is clear that the substantive due process claim in Count II is indistinguishable from the state-created danger claim in Count I. Counts I and II seek the same remedy pursuant to the same theory of liability (state-created danger). Moreover, Count II repeats the same factual allegations that are identified in Count I, as the complaint states that Defendants' actions affirmatively created the conditions that allowed Father to sexually abuse Jane Doe, and therefore Defendants "violated her substantive due process rights under the state-created danger doctrine." ECF No. 16 at 19. As such, the Court

will grant Defendants' motion to dismiss Count II's substantive due process claim under Rule 12(b)(6).

### 3. Section 1983 – Violation of Fourth Amendment rights (Count III)

In Count III, Plaintiff alleges that under the Fourth Amendment, Jane Doe had a clearly established constitutional right to protection from unreasonable seizure by the State. Plaintiff alleges that Jane Does's Fourth Amendment rights were violated by Defendants as they acted outside of their discretion and unreasonably seized her by directing and coercing her transfer into the unsupervised physical custody of Father on April 30, 2023, absent a court order or a Team Decision Making meeting. Plaintiff states that this seizure was unreasonable because Defendants had documentation and knowledge that Father posed a substantial and immediate risk to Jane Doe. Defendants subsequently seized Jane Doe from Bourbon's custody on May 26, 2023, without advance notice, without compliance with statutory termination procedures under Mo. Rev. Stat. § 210.123, and without stating an emergency that justified immediate removal.

In their motion to dismiss, Defendants state that Count III fails to challenge Defendants' qualified immunity because Plaintiff was not unreasonably seized. In response, Plaintiff points out that Defendants offer no reasoning, supporting exhibit, or other citation on this point, just a conclusory statement that raises a factual dispute inappropriate for Rule 12. *See Twombly*, 550 U.S. at 556; *see also Gladden v. Richbourg*, 759 F.3d 960, 966–67 (8th Cir. 2014).

For the reasons stated above, Plaintiff's Section 1983 claims in Count III against Defendant Children's Division and the other Defendants in their official capacities are not viable. *Will*, 491 U.S. at 71. Thus, Defendants' motion to dismiss Count III of Plaintiff's complaint will be granted as to Defendant Children's Division and Defendants Miller, Honea, Rueweler-Pogue, Pogue, and Shaw in their official capacities.

18

"In deciding whether there has been a violation of the Fourth Amendment . . . a court must also determine whether the seizure was unreasonable, both in its inception and in the manner in which the seizure occurred." *Heartland Acad. Community Church v. Waddle*, 317 F.Supp.2d 984, 1090-91 (E.D. Mo. 2004), *aff'd*, 427 F.3d 525 (8th Cir. 2005). "In the context of removing a child from his home and family, a seizure is reasonable if it is pursuant to a court order, if it is supported by probable cause, or if it is justified by exigent circumstances, meaning that state officers have reason to believe that life or limb is in immediate jeopardy." *Id*. at 1091 (cleaned up). The individual Defendants would be "entitled qualified immunity if their actions are properly founded upon a reasonable suspicion of child abuse." *Collins v. Bellinghausen*, 153 F.3d 591, 596 (8th Cir. 1998).

Plaintiff alleges that Defendants unreasonably seized her by directing her transfer into the unsupervised physical custody of Father on April 30, 2023, without a court order or a Team Decision Making meeting. In addition to the absence of a court order, there was no probable cause or exigent circumstances justifying this transfer. Yet Plaintiff failed to cite legal authority to support the proposition that directing the transfer of a child for a temporary visit constitutes a seizure under the Fourth Amendment. In the Section 1983 context, "[s]howing that a right was clearly established requires identifying controlling precedent with a close correspondence to the particulars of the present case." *Rusness v. Becker Cnty.*, 31 F.4th 606, 615 (8th Cir. 2022). "The plaintiff bears the burden to show that the violation was clearly established." *Harmon*, 125 F.4th at 884. Here, Plaintiff has not sufficiently alleged facts to show that the order of transfer of Plaintiff for visitation with Father constitutes an unreasonable seizure under the Fourth Amendment.

19

**Scott Miller, Christina Rueweler-Pogue, Savannah Pogue, and Mindy Shaw**

The Court finds that Plaintiff fails to plausibly allege that Defendants Miller, Rueweler-Pogue, Pogue, and Shaw violated Plaintiff's Fourth Amendment rights. The complaint states that Defendants seized Jane Doe from Bourbon's custody on May 26, 2023, "without advance notice, without compliance with statutory termination procedures under Mo. Rev. Stat. §210.123, and without stating an emergency that justified immediate removal." ECF No. 16 at 22. The complaint further alleges that "Defendants deprived Jane Doe of her Fourth Amendment rights without probable cause, notice, a court order, a Team Decision Making meeting, complying with the TAPA, or complying with mandatory statutory procedures, including but not limited to the reporting and termination requirements imposed by Missouri law." *Id.* However, these allegations group all of the Defendants together without providing facts that would support the assertion that Defendants Miller, Rueweler-Pogue, Pogue, and Shaw were each individually involved in seizing Plaintiff in violation of the Fourth Amendment. In the absence of such factual support, the above allegations concerning the Defendants as a group are no more than "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements," and are thus insufficient. *Iqbal*, 556 U.S. at 678. Moreover, "[l]iability under § 1983 requires a defendant's personal involvement in the alleged misconduct." *Morris*, WL 73790 at *2 (citing *Madewell*, 909 F.2d at 1208 ("Liability under § 1983 requires a causal link to, and direct responsibility for, the deprivation of rights.")). Plaintiff's complaint fails to allege Defendants Miller, Rueweler-Pogue, Pogue, and Shaw's personal involvement and direct responsibility for the removal of Jane Doe from Bourbon's custody.

Moreover, Plaintiff's allegation that "Defendants made and filed an erroneous court report with full knowledge of the factual misrepresentations" is irrelevant to the Fourth

20

Amendment seizure analysis. ECF No. 16 at 22. The allegedly erroneous court report was filed on June 22, 2023, nearly a month after Jane Doe was removed from Bourbon's custody; it thus offers no support for the proposition that Defendants Miller, Rueweler-Pogue, Pogue, and Shaw personally participated in the seizure. Plaintiff's complaint does not allege sufficient facts demonstrating Defendants Miller, Rueweler-Pogue, Pogue, and Shaw's personal involvement and direct responsibility for seizing Plaintiff in violation of the Fourth Amendment. Accordingly, the Court will grant Defendants' motion to dismiss Count III as to Defendants Miller, Rueweler-Pogue, Pogue, and Shaw in their individual capacities.

**Robin Honea**

On the other hand, Plaintiff's complaint specifically references Defendant Honea's involvement in the removal of Jane Doe from Bourbon's custody. The complaint states that on May 26, 2023, "without forewarning, Defendant Honea appeared at Mrs. Bourbon's home, removed Jane Doe from Mrs. Bourbon's custody, and placed Jane Doe into the physical custody of Children's Division." *Id*. at 10. The complaint also alleges that when "giving testimony in the juvenile case for Jane Doe, Defendant Honea stated that the removal of Jane Doe from Mrs. Bourbon was not due to any actions by Mrs. Bourbon." *Id*. Moreover, "Defendant Honea further explained that her reasoning for removing Jane Doe from Mrs. Bourbon's custody was for Jane Doe's safety as there was an unknown person named Tina." *Id*. at 11. Plaintiff's complaint submits that "Tina was not a person named in the initial hotline call, nor was she named in the initial court report, nor has she been identified since." *Id*.

The above facts plausibly allege Defendant Honea's liability under Section 1983 as they show her personal involvement in the alleged misconduct and a causal link to, and direct responsibility for, the deprivation of rights. *See Morris*, WL 73790 at *2 (citing *Madewell*, 909

F.2d at 1208)). These facts, along with the allegation that Jane Doe was seized from Bourbon's custody on May 26, 2023 without probable cause, advance notice, a court order, a Team Decision Making meeting, or compliance with the TAPA and mandatory statutory procedures, combine to support a plausible allegation that Defendant Honea's seizure of Plaintiff was "unreasonable, both in its inception and in the manner in which the seizure occurred," in violation of the Fourth Amendment. *See Waddle*, 317 F.Supp.2d at 1091 (noting that a "seizure is reasonable if it is pursuant to a court order, if it is supported by probable cause, or if it is justified by exigent circumstances"). Therefore, Defendants' motion to dismiss Count III of Plaintiff's complaint will be denied as to Defendant Honea in her individual capacity with respect to the May 26, 2023 removal of Jane Doe from Bourbon's custody.

## II.    STATE LAW CLAIMS

In Counts IV through VII, Plaintiff asserts four alternative state law claims: negligence against all Defendants officially and individually (Count IV); intentional infliction of emotional distress against all Defendants officially and individually (Count V); negligent supervision against Defendant Children's Division (Count VI); and respondeat superior against Defendant Children's Division (Count VII).

### 4.  Negligence (Count IV)

In Count IV, Plaintiff alleges that Defendants owed Jane Doe a duty to exercise reasonable care in the investigation, reporting, supervision, and management of suspected child abuse, and that Defendants had a duty to act in the best interests of Plaintiff pursuant to Mo. Rev. Stat. § 210.564 and were obligated to report suspected abuse or neglect pursuant to Mo. Rev. Stat. § 210.115. Plaintiff asserts that Defendants had a ministerial duty to report the incident of Jane Doe masturbating on April 24, 2023, as this behavior constituted reasonable cause to

suspect that Jane Doe was a sexual abuse victim, and to report the incident of Jane Doe stating "daddy sucks my butt" on April 25, as this gave Defendants reasonable cause to suspect that sexual abuse occurred. Plaintiff submits that Defendants failed to report the suspected sexual abuse and thus breached their mandatory ministerial duties. Further, Plaintiff alleges that compliance with the TAPA was a ministerial duty imposed upon Defendants under Mo. Rev. Stat. § 210.123. By authorizing Jane Doe's unsupervised visit with Father, Defendants failed to perform their ministerial duty to comply with the TAPA and breached their duty of care to Plaintiff, and they lacked lawful authority to remove Jane Doe from Bourbon's care. Moreover, Plaintiff's complaint alleges that Defendants knowingly mandated unsupervised contact between Jane Doe and Father on April 30, 2023, with malice and in bad faith, despite having actual knowledge and documented evidence of Father's criminal history, active drug use, unsafe living conditions, lack of a valid driver's license, and Jane Doe's allegations of sexual abuse.

In their motion to dismiss, Defendants argue that Plaintiff's complaint fails to establish that Defendant Children's Division waived its sovereign immunity or that there is an exception to the application of sovereign immunity. Defendants contend that the complaint's allegations that Defendants waived their sovereign and official immunity are catch-all, legally conclusory assertions. Defendants also maintain that the complaint jumbles together the separate doctrines of sovereign and official immunity within a single assertion in Count IV.

Defendants further advance that the act of reporting suspected abuse pursuant to Section 210.115 has been found to involve an exercise of professional judgment. *K.B. v. Waddle*, 764 F.3d 821, 825 (8th Cir. 2014) (finding that an official's duty under Section 210.115 is "discretionary, not ministerial"). Reporting is required when there is "reasonable cause to suspect" abuse. Mo. Rev. Stat. § 210.115.5. Defendants thus conclude that Defendants Miller,

23

Honea, Shaw, Rueweler-Pogue, and Pogue are entitled to official immunity because the reporting requirements under Section 210.115 are discretionary acts, requiring the exercise of judgment. Defendants also assert that Plaintiff does not plead sufficient facts to show that Defendants acted with malice or bad faith. Defendants maintain that the allegations do not support that they intended to cause Plaintiff injury; rather, the complaint alleges that Defendants only intended for Father to take Plaintiff to church during the visit.

In response, Plaintiff submits that Defendants fail to address the complaint's allegations of Defendants' non-compliance with the TAPA's terms and therefore concede this separate ministerial obligation. The TAPA specified that Father was permitted supervised visitation only, at a park, for a minimum of two hours per week, and only with proven sobriety. Plaintiff contends that this restriction is not a standard requiring judgment about whether a new directive should be issued, and that compliance with the TAPA involves no discretion. Plaintiff insists that Defendants' unilateral modification of the TAPA violated their ministerial duty. Likewise, Plaintiff asserts that her removal from Bourbon's custody without the ten-day written notice required by Section 210.123.6 constituted a failure to perform a ministerial obligation.

The Court finds that Plaintiff's complaint plausibly alleges that Defendant Children's Division waived sovereign immunity through the purchase of liability insurance which covers Plaintiff's claims. "Sovereign immunity is the privilege of the sovereign not to be sued without its consent." *Virginia Off. for Prot. & Advoc. v. Stewart*, 563 U.S. 247, 253 (2011). "[I]n the absence of an express statutory exception to sovereign immunity, or a recognized common law exception such as the propriety function and consent exceptions, sovereign immunity is the rule and apples to all suits against public entities." *Church v. Missouri*, 913 F.3d 736, 743 (8th Cir. 2019) (citing *Metropolitan St. Louis Sewer Dist. v City of Bellefontaine Neighbors*, 476 S.W.3d

24

913, 921-22 (Mo. 2016). Notably, however, pursuant to Mo. Rev. Stat. Ann. § 537.610, "when a public entity purchases liability insurance for tort claims, sovereign immunity is waived to the extent of and for the specific purposes of the insurance purchased." *Fantasma v. Kansas City, Mo., Bd. of Police Com'rs*, 913 S.W.2d 388, 391 (Mo. App. W.D. 1996) (citing *State ex rel. Board of Trustees v. Russell*, 843 S.W.2d 353, 360 (Mo. banc 1992)).

In *Kunzie v. City of Olivette*, the Missouri Supreme Court found that the plaintiff plausibly alleged facts that, if proved, would bring his tort claims within the purview of Mo. Rev. Stat. Ann. § 537.610. 184 S.W.3d 570, 574 (Mo. banc. 2006). In that case, the plaintiff alleged that the defendant city maintained liability insurance "to handle the consequences of employment related actions brought against them." *Id. See also Blakeney v. City of Pine Lawn, Missouri*, No. 4:19-CV-02017-SNLJ, 2020 WL 4569175, at *5 (E.D. Mo. Aug. 7, 2020) (finding that the plaintiff's "bare-bones allegations" seemed to suffice where the plaintiff alleged that the defendant "has procured liability insurance" for "claims such as this.").

Here, Plaintiff alleges that Defendant Children's Division waived sovereign immunity through "the purchase of liability insurance covering such claims." ECF No. 16 at 28, 34. Despite this "bare-bones" allegation, on the basis of *Kunzie*, the Court finds that Plaintiff has plausibly alleged facts that, if proved, would bring his tort claims within the purview of Mo. Rev. Stat. Ann. § 537.610. Taking Plaintiff's complaint's material allegations as true, Plaintiff's complaint plausibly alleges at this stage of litigation that Defendant Children's Division waived sovereign immunity through the purchase of liability insurance which covers Plaintiff's claims.

At the same time, "[u]nder Missouri law, the official immunity doctrine protects public officials from liability for injuries arising out of their discretionary acts or omissions." *Brandy v. City of St. Louis*, 75 F.4th 908, 917 (8th Cir. 2023). Official immunity does not apply when a

25

public official (1) fails to perform a ministerial duty required by law or (2) acts in bad faith or with malice. *State ex rel. Love v. Cunningham*, 689 S.W.3d 489, 495 (Mo. 2024). The Missouri statute that requires reporting of child abuse, Mo. Rev. Stat. § 210.115, imposes a duty that is a discretionary function. *See Waddle*, 764 F.3d at 825. Section 210.115.1 provides: "When any . . . person with responsibility for the care of children has reasonable cause to suspect that a child has been or may be subjected to abuse . . . , that person shall immediately report to the division. . . ." Mo. Rev. Stat. § 210.115.1. Critically, the reporting requirement is only triggered by "reasonable cause to suspect" abuse, and that "reasonable cause" determination "requires an exercise of discretion and personal judgment, which takes the matter out of the realm of a ministerial act." *Larson by Larson v. Miller*, 76 F.3d 1446, 1457 (8th Cir. 1996) (en banc). Even though "an official might exercise poor judgment in a given case, [such judgment] does not remove the conduct from the category of discretionary acts." *Waddle*, 764 F.3d at 825. Because the reporting requirement under Section 210.115 requires the exercise of discretion, Defendants Miller, Honea, Rueweler-Pogue, Pogue, and Shaw are entitled to official immunity as to Plaintiff's state-law negligence claim regarding the duty to report under Section 210.115.

Likewise, the obligation to comply with the TAPA pursuant to Mo. Rev. Stat. § 210.123 involves a discretionary function. Section 210.123.11 provides:

> The juvenile officer shall not be bound by the terms of a temporary alternative placement agreement, unless the juvenile officer is a signatory to the agreement, and the juvenile officer may exercise discretion to take appropriate action within the juvenile officer's authority under law. However, the juvenile officer shall take into consideration the provisions of and the implementation of the agreement when taking action under such authority.

Mo. Rev. Stat. § 210.123.11.

Plaintiff alleges that Defendants Miller, Honea, and Shaw executed the TAPA. As signatories, they are therefore bound by the terms of the TAPA under Section 210.123.11. Yet

26

the language of the statute indicates that Defendants are entitled to "exercise discretion to take appropriate action" regardless of whether they are a signatory to the TAPA. *Id*.

It is clear that pursuant to Mo. Rev. Stat. § 210.123.6, Defendants were required to submit a written report to the juvenile office ten days before termination of the TAPA and provide a copy of the report to Bourbon. Defendants' failure to comply with Section 210.123.6, however, does not open them to liability with respect to Plaintiff's state-law negligence claim. Because Section 210.123.11 provides for the "exercise [of] discretion to take appropriate action," Defendants' duty to comply with the terms of the TAPA involves a discretionary function. Defendants are therefore entitled to official immunity with respect to Plaintiff's negligence claim, as the Defendants' failure to comply with Section 210.123.6 does not change the fact that Defendants were permitted pursuant to the statute to exercise discretion in taking actions in accordance with the terms of the TAPA. As acting in accordance with a TAPA under Section 210.123 requires the exercise of discretion, Defendants Miller, Honea, Rueweler-Pogue, Pogue, and Shaw are entitled to official immunity as to Plaintiff's state-law negligence claim regarding the obligation to comply with the TAPA under Section 210.123.

In the alternative, Plaintiff's complaint alleges that if compliance with the TAPA is deemed discretionary, Defendants acted with bad faith and malice. "[O]fficial immunity does not apply to discretionary acts done in bad faith or with malice." *Blue v. Harrah's N. Kan. City, LLC*, 170 S.W.3d 466, 479 (Mo. App. W.D. 2005). A finding of malice requires "conduct which is so reckless or wantonly and willfully in disregard of one's rights that a trier of fact could infer from such conduct bad faith or any improper or wrongful motive." *State ex rel. Twiehaus v. Adolf*, 706 S.W.2d 443, 447 (Mo. 1986). A finding of bad faith "embraces more than bad judgment or negligence. It imports a dishonest purpose, moral obliquity, conscious wrongdoing, [or] breach

27

of a known duty through some ulterior motive." *Id*. (cleaned up). In Missouri, bad faith or malice requires "actual intent to cause injury." *State ex rel. Love v. Cunningham*, 689 S.W.3d 489, 496 (Mo. 2024). Bare allegations of bad faith and malice are insufficient; rather, a plaintiff must plead specific facts permitting an inference that the defendants intended to cause harm. *Id*. at 497. Official immunity shields a public employee even when an intentional violation of policy amounts to gross negligence or recklessness. *Id*. at 497-98

Here, Plaintiff's complaint cannot be construed to allege a personal intent on the part of Defendants to cause injury. Rather, the complaint repeatedly refers to Defendants' bad faith and malice in the context of the removal of Plaintiff from Bourbon's custody and the filing of the erroneous court report. ECF No. 16 at 17, 20, 23, 27, 28. But these bare allegations only indicate a possible motive to shift responsibility after the abuse occurred, and do not permit an inference that Defendants intended to cause Plaintiff harm. The complaint further states that Defendants' bad faith and malice are evidenced by "their intentional, unlawful modification of the custody arrangement" and "their deliberate indifference to the known and obvious harm that Father presented to Jane Doe" as well as allowing Father to have unsupervised contact with Jane Doe and ordering Bourbon to comply with the visit. *Id*. at 27. Yet even these allegations are not indicative of actual intent to cause Plaintiff harm. At best, the allegations suggest that Defendants acted with callous and deliberate indifference and conscious disregard for Plaintiff's safety, but that is insufficient to plausibly allege actual intent to cause harm.

Plaintiff's complaint also alleges that "Defendants knowingly authorized, directed, and mandated unsupervised contact between Jane Doe and Father . . . with malice and in bad faith." *Id*. at 29. Even here, Plaintiff's pleadings fall short of Missouri's high bar, as Plaintiff does not allege any specific facts permitting an inference of actual intent to cause harm. Likewise, the

28

complaint alleges that Defendants waived immunity through "conduct undertaken in bad faith or with conscious disregard for Jane Doe's safety" and due to "Defendants' actions being made in bad faith and with reckless indifference to the consequences." *Id*. at 28, 31, 34. Plaintiff's complaint fails to allege that Defendants acted with actual intent to cause harm. Accordingly, the Court finds that Defendants Miller, Honea, Rueweler-Pogue, Pogue, and Shaw are entitled to official immunity for the claims alleged in Count IV. Therefore, Defendants' motion to dismiss Count IV of Plaintiff's complaint will be granted with respect to Defendants Miller, Honea, Rueweler-Pogue, Pogue, and Shaw.

Yet, "[e]ven when official immunity protects a government employee from liability there remains tortious conduct for which the governmental employer can be derivatively liable. A governmental employer may still be liable for the actions of its employee even if the employee is entitled to official immunity." *Davis v. Lambert-St. Louis Intern. Airport*, 193 S.W.3d 760, 766 (Mo. banc 2006). As official immunity does not extend to Defendant Children's Division, and Plaintiff has plausibly alleged that sovereign immunity has been waived, the Court must consider whether Plaintiff has plausibly alleged a negligence claim against Defendant Children's Division. Under Missouri law, the elements of a claim of negligence are "(1) [a] legal duty by the defendant to conform to a certain standard of conduct to protect others against unreasonable risks; (2) a breach of that duty; (3) a proximate cause between the conduct and the resulting injury; and (4) actual damages to the plaintiff's person or property." *Horn v. B.A.S.S.*, 92 F.3d 609, 611 (8th Cir. 1996) (citing *Hoover's Dairy, Inc. v. Mid -America Dairymen, Inc.*, 700 S.W.2d 426, 431 (Mo. banc 1985)).

Here, Plaintiff alleges that Defendant Children's Division failed to uphold and breached its duty to supervise its employees and protect Jane Doe from foreseeable harm., thus directly

29

causing injury to Plaintiff and damages in the form of psychological trauma and ongoing therapy. Taking these material allegations as true and liberally construing them in Plaintiff's favor, the Court finds that Plaintiff's complaint plausibly alleges the elements of negligence against Defendant Children's Division. Therefore, Defendants' motion to dismiss Count IV of Plaintiff's complaint will be denied as to Defendant Children's Division.

### 5.  Intentional Infliction of Emotional Distress (Count V)

In Count V, Plaintiff alleges that Defendants undertook their actions with actual knowledge, or with reckless disregard, that mandating the exposure of Jane Doe to her Father, her abuser, would cause or have a high probability of causing severe physical, emotional, and psychological harm, which Jane Doe sustained and continues to sustain. The complaint further alleges that Defendants engaged in extreme and outrageous conduct that exceeded all possible bounds of decency and is regarded as utterly intolerable.

The Court finds that Plaintiff's complaint fails to plausibly allege intentional infliction of emotional distress in Count V. "To recover for intentional infliction of emotional distress, a plaintiff must show (1) the defendant's conduct was extreme and outrageous; (2) the defendant acted intentionally or recklessly; and (3) the defendant's conduct caused extreme emotional distress resulting in bodily harm." *John Doe CS v. Capuchin Franciscan Friars*, 520 F.Supp.2d 1124, 1134 (E.D. Mo. 2007) (citing *Cent Mo. Elec. Co-op. v. Balke*, 119 S.W.3d 627, 636 (Mo. App. W.D. 2003) (cleaned up). "The conduct must have been so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community." *Sansonetti v. City of Saint Joseph*, 976 S.W.2d 572, 579 (Mo. App. W.D. 1998) (cleaned up). "The conduct must be 'intended only

30

to cause extreme emotional distress to the victim.'" *Gibson v. Brewer*, 952 S.W.2d 239, 249 (Mo. banc 1997) (quoting *K.G. v. R.T.R.*, 918 S.W.2d 795, 799 (Mo. banc 1996)).

As Count V alleges intentional acts compared to negligence, official immunity does not apply. *Boyd v. Cedar Cnty., Missouri*, No. 3:25-CV-05033-MDH, 2025 WL 3243440, at *5 (W.D. Mo. Nov. 20, 2025). Plaintiff's complaint repeatedly alleges that Defendants acted recklessly and that Plaintiff was injured as a result. ECF No. 16 at 17, 30, 31, 36. Specifically, the complaint alleges that Defendants had actual knowledge and documented evidence of Father's criminal history, active drug use, unsafe living conditions, lack of a valid driver's license, and Jane Doe's allegations of sexual abuse against Father. Yet Defendants authorized and facilitated an unsupervised visit between Jane Doe and Father on April 30, 2023. Plaintiff alleges that this qualifies as extreme and outrageous conduct, and that Defendants acted with actual knowledge or with reckless disregard in directing the unsupervised visit. Plaintiff alleges that as a result of Defendants' conduct, Plaintiff sustained severe emotional distress, psychological injuries, and associated physical manifestations due to Father's sexual abuse.

Plaintiff's allegations, however, group all Defendants together without providing facts that would support the assertion that each Defendant specifically acted intentionally or recklessly or engaged in extreme or outrageous conduct. As such factual support is lacking, the above allegations concerning Defendants as a group are no more than "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements," and are thus insufficient. *Iqbal*, 556 U.S. at 678. Furthermore, Plaintiff has not alleged that any of the Defendants' conduct was "intended only to cause extreme emotional distress to the victim." *Gibson*, 952 S.W.2d at 249. As essential elements of intentional infliction of emotional distress

31

under Missouri law are lacking, Plaintiff fails to allege such a claim. The Court will accordingly grant Defendants' motion to dismiss Count V as to all Defendants.

### 6. Negligent Supervision and Respondeat Superior (Counts VI and VII)

In Counts VI and VII, Plaintiff alleges that Defendant Children's Division had a duty to supervise its employees to ensure compliance with child-protection statutes, regulations, and safety plans designed to protect children in state custody from abuse and neglect, including but not limited to the duties imposed by Mo. Rev. Stat. §§ 210.109, 210.115, 210.123, 210.145, and 210.564. Plaintiff asserts that Defendant Children's Division's failure to enforce these mandatory safeguards constituted a breach of its ministerial duty to supervise its employees and to protect Jane Doe from foreseeable harm. Moreover, Plaintiff contends that Defendant Children's Division failed to uphold its duty to supervise Defendants Miller, Honea, Shaw, Rueweler-Pogue, and Pogue, who used their office and State authority to file the erroneous court report with full knowledge of its factual misrepresentations, and that their tortious acts were committed in the course and scope of their employment with Defendant Children's Division.

The Court finds that Plaintiff's complaint plausibly alleges a state-law negligent supervision claim against Defendant Children's Division in Count VI. "To make a prima facie case of negligent supervision, a plaintiff must prove: (1) a legal duty on the part of the defendant to use ordinary care to protect the plaintiff against unreasonable risks of harm; (2) a breach of that duty; (3) a proximate cause between the breach and the resulting injury; and (4) actual damages to the plaintiff's person or property." *G.L.F. ex rel. Felter v. Heiman*, 423 F.Supp.2d 967, 971 (E.D. Mo. 2006) (citing *Cook v. Smith*, 33 S.W.3d 548, 553 (Mo. App. W.D. 2001)).

As stated above, Plaintiff's complaint plausibly alleges that Defendant Children's Division waived sovereign immunity through the purchase of liability insurance which covers

32

Plaintiff's claims. Moreover, it is established that official immunity does not extend to Defendant Children's Division. *Davis*, 193 S.W.3d at 766. Plaintiff alleges that Defendant Children's Division failed to uphold and breached its duty to supervise its employees and protect Jane Doe from foreseeable harm., and in so doing directly caused injury and damages in the form of psychological trauma and ongoing therapy. At the motion to dismiss stage, the Court takes "the complaint's material allegations as true and liberally construe[s] the complaint in the plaintiff's favor." *Davenport v. Farmers Ins. Group*, 378 F.3d 839, 842 (8th Cir. 2004). Accepting these allegations as true at this stage of litigation, the Court finds that Plaintiff's complaint plausibly alleges the elements of negligent supervision against Defendant Children's Division. Therefore, Defendants' motion to dismiss Count VI of Plaintiff's complaint will be denied.

Likewise, the Court finds that Plaintiff's complaint plausibly alleges a state-law respondeat superior claim against Defendant Children's Division in Count VII. "Under the doctrine of respondeat superior, an employer is responsible for the negligent acts of its employee if the employee's tortious acts were done within the scope of his employment duties." *Id*. at 765. "Because the defense of official immunity is personal to a public employee, it cannot extend to protect his employing government entity sued under the doctrine of respondeat superior." *Southers v. City of Farmington*, 263 S.W.3d 603, 611 (Mo. banc 2008), *as modified on denial of reh'g* (Sept. 30, 2008). "A government employer may still be liable for the actions of its employee even if the employee is entitled to official immunity because the doctrine protects the employee from liability, but it does not erase the existence of the underlying tortious conduct for which the government employer can be derivatively liable." *Id*. (cleaned up). Plaintiff alleges that the tortious acts committed by Defendants Miller, Honea, Shaw, Rueweler-Pogue, and Pogue were committed in the course and scope of their employment with Defendant Children's

33

Division. Accepting these allegations as true for purposes of this motion to dismiss, the Court finds that Plaintiff plausibly alleges the elements of respondeat superior at this stage of litigation. Therefore, Defendants' motion to dismiss Count VII of Plaintiff's complaint will be denied.

**CONCLUSION**

Accordingly,

**IT IS HEREBY ORDERED** that Defendants' motion to dismiss [ECF No. 26] is **GRANTED in part** and **DENIED in part** as follows:

1.  On Count I, the motion as to Defendant Children's Division and Defendants Miller, Honea, Rueweler-Pogue, Pogue, and Shaw in their official capacities and as to Defendants Honea, Rueweler-Pogue, and Pogue in their individual capacities is **GRANTED**, and the motion as to Defendants Miller and Shaw in their individual capacities is **DENIED**.

2.  On Count II, the motion as to all Defendants is **GRANTED**.

3.  On Count III, the motion as to Defendant Children's Division and Defendants Miller, Honea, Rueweler-Pogue, Pogue, and Shaw in their official capacities and as to Defendants Miller, Rueweler-Pogue, Pogue, and Shaw in their individual capacities is **GRANTED**, and the motion as to Defendant Honea in her individual capacity with respect to the May 26, 2023 removal of Jane Doe from Bourbon's custody is **DENIED**.

4.  On Count IV, the motion as to Defendants Miller, Honea, Rueweler-Pogue, Pogue, and Shaw is **GRANTED**, and the motion as to Defendant Children's Division is **DENIED**.

5.  On Count V, the motion as to all Defendants is **GRANTED**.

6.  On Count VI, the motion as to Defendant Children's Division is **DENIED**.

7.  On Count VII, the motion as to Defendant Children's Division is **DENIED**.

34

Dated this 7th day of August, 2026.

_____
**JOHN A. ROSS**
**UNITED STATES DISTRICT JUDGE**